59837. DUNIVANT v. THE STATE.
59838. ANTHONY v. THE STATE.
59839. LIVINGSTON v. THE STATE.

BIRDSONG, Judge.
Search and seizure. The appellants, Dunivant, Anthony and Livingston, were tried jointly and convicted of a violation of the Georgia Controlled Substances Act (possession of methamphetamine) and each sentenced to serve four years. Each appellant enumerates as error the denial of a motion to suppress the fruits of an illegal search and their subsequent conviction based upon the evidence of drugs seized from their persons and presence.

The relevant facts show that a firm representing itself as Anthony and Associates placed an order with Scientific Products, a

chemical supply company, for certain chemicals and equipment such as burners and beakers used in manufacturing chemical compounds. Most of the chemical substances and equipment were delivered to Anthony and Associates at an address in Chamblee in February, 1979. However, one of the chemicals ordered was not available and was back-ordered by Scientific Products. The back-ordered chemical was received by Scientific Products in late May or early June, 1979. Because the chemicals were specific for the manufacture of methamphetamine, and apparently in accordance with instructions from the U. S. Drug Enforcement Agency, Scientific Products about June 1, 1979 telephonically notified an agent of the DEA that someone from Anthony and Associates had ordered chemicals useful in the manufacture of methamphetamine. The DEA agents also were informed that one substance essential in the compounding of methamphetamine (benzyl-chloride) had not been available and had been back-ordered. Further, though it is not clear, there appears to have been two boxes of benzyl-chloride in the back order. When the chemical was received and at the directions of the DEA, an electronic "beeper" was placed in each box of benzyl-chloride. Delivery was to be effected to the purchaser about July 1. After July 1, the beepers were activated each morning and deactivated each evening by an agent of the DEA pending the pick-up by someone from Anthony and Associates.

In early June, the Chamblee address had been placed under surveillance and it appeared to be a residence, not usable as a manufacturing site. Commencing on July 1, agents of the U. S. and state DEA and G. B. I. placed the business premises of Scientific Products under surveillance and maintained that surveillance for about two weeks. A DEA airplane and pilot were standing by at a nearby airport and five to seven vehicles were on call to assist in a "tail" of any vehicle used to pick up the benzyl-chloride.

On July 11, the appellant Anthony appeared at Scientific Products to accept delivery of the chemical. Anthony attempted to pay for the chemical by check and delivery was refused. The next day Dunivant appeared with cash and accepted delivery of the benzyl-chloride, with the beepers activated in the boxes. The chemical voluntarily was placed into a 1977 Chevrolet Blazer by Dunivant who was not aware of the presence of the beepers. Dunivant then proceeded in a westerly direction toward Carrollton. Five to seven police cars were engaged in keeping the Blazer under constant surveillance with the cars rotating as "point" vehicle so that Dunivant would not be aware that he was being followed. The plane was called into the surveillance and kept the Blazer under constant observation on the trip into Carroll County. One of the tailing

vehicles had a receiving device as did the aircraft. All vehicles and the plane were in communication with each other. The Blazer was kept in constant visual surveillance until Dunivant turned off the paved highway onto a dirt road in rural Carroll County. At that time because of heavy tree foliage alongside the roadway, the plane and the other vehicles lost contact with the Blazer for approximately five minutes. The plane, however, could hear the beeper. In effect, by triangulating flights over the wooded area, the plane isolated the sound to an area of about 100 yards. Physical surveillance up the road by DEA and G. B. I. agents established that the sound had to be coming from one of two houses on the heavily wooded roadway. Closer observation disclosed the Blazer parked at one of these houses. Based upon the location of the Blazer and the fact that it apparently had arrived at its destination, the officers proceeded to Carrollton and obtained a search warrant for that particular house. Armed with the warrant, the officers returned to the house and in a small building immediately adjacent to the described house, the officers observed one of the appellants in an open doorway, one holding a beaker over a heat source and the other stirring something in the beaker. This substance was seized and subsequently proved to be methamphetamine. The warrant described and sought to seize not only the benzyl-chloride but the chemicals purchased and delivered in February.

Each appellant argues that the emplacement of the beepers in the benzyl-chloride constituted a search and that search required a first warrant which admittedly was not procured. They further complained that the ultimate search warrant issued in Carrollton was based upon misleading information in that no mention was made of the use of an electronic beeper and the affiant averred only that the Blazer had been under constant surveillance from the time it left Atlanta until the time it arrived at the house in Carroll County. Lastly, each appellant argues that the information in the warrant was stale because no evidence was offered to show continuously the whereabouts of the chemicals and equipment purchased in February, which were alleged in the warrant to be part of what was sought to be seized. *Held:*

1. Appellants contend that the insertion of the beepers into the boxes of chemicals constituted a search which falls within the ambit of the Fourth Amendment. In support of this contention, they cite United States v. Holmes, 521 F2d 859, 864-867 (5th Cir. 1975) and State v. Hendricks, 43 N. C. App. 245 (258 SE2d 872) (1979).

We are confronted in this state with a question of first impression. However, commencing in about 1975, the federal courts have repeatedly been confronted with similar questions. One of the earliest cases was the Fifth Circuit case of United States v. Holmes,

supra. That case involved the non-consensual emplacement of a beeper upon a suspect's car while it was parked in a parking lot and the following of the car by use of the beeper. The court held the emplacement of the beeper to be a search accomplished by a trespass. The Fifth Circuit court concluded as a matter of policy that the interest to be protected was not the car itself but the expectation of privacy that the owner of an automobile has while operating his automobile even upon the public roads. The federal court relied heavily on the Supreme Court's holding in Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967), and held that the use of a beeper was a search protected by the Fourth Amendment and that an order was required before a beeper could be used, balancing the right of the public to freedom from drug traffic against the right of privacy of the individual and holding that these conflicting rights had to be weighed by an impartial magistrate and not by the officers seeking to ferret out the suspected crime. Thus, Holmes equated the use of a beeper to a telephone tap. In Hendricks, supra, a North Carolina court adopted the same rationale. A similar opinion was rendered by the District Court of Massachusetts in United States v. Bobisink, 415 FSupp 1334, 1338 (D Mass 1976).

However, the rationale of the Bobisink case and Holmes (though Holmes was not cited as such) was rejected by the First Circuit in an appeal of Bobisink, sub nom, United States v. Moore, 562 F2d 106 (1st Cir. 1977). As in United States v. Moore, supra, during the years 1977-1979, the privacy argument has yielded to the proposition that the public has the right to expect the state to protect its citizens from the flow of illicit drugs and to enforce the criminal law so long as there is no more than a minimal intrusion in the right of privacy enjoyed by the individual. Thus, in United States v. Dubrofsky, 581 F2d 208 (9th Cir. 1978), it was held that the mere insertion of a beeper device does not violate any Fourth Amendment right where there is probable cause to believe a crime is intended. Nor was the mere presence of the beeper such an impermissible intrusion as to constitute a search. If all it does is reflect that a package is at a certain location, it is the equivalent of an extension of a surveilling officer's senses and their unaided physical abilities. Such a limited intrusion does not require an antecedent justification. See Dubrofsky, supra, p. 211 (5). In United States v. Botero, 589 F2d 430 (9th Cir. 1978) (cert denied, 441 U. S. 944 (99 SC 2162, 60 LE2d 1045)), the Ninth Circuit reaffirmed its conclusion that the insertion of a beeper was not a "search."

We note that many of the cases considering this question deal with the insertion of a beeper into contraband (i.e., drugs legally opened by the postal authorities, resealed with a beeper, and when the addressee takes possession, the following of the addressee to the

final location). These cases generally tend to hold that the addressee has no expectation of privacy in contraband. See United States v. Bruneau, 594 F2d 1190 (8th Cir. 1979) as an example. Also a number of these cases involve the emplacement of a transponder or beeper on leased aircraft illegally importing marijuana or cocaine into the United States from Mexico or Columbia. Illuminating language can be paraphrased from United States v. Miroyan, 577 F2d 489, 493 (II) (9th Cir. 1978) where the court in substance held that where the installation occurred before the sale or lease and thus before the purchaser or lessee had taken control and dominion over the plane (or box of chemicals in this case), the only ownership rights lay in the seller or lessor. Because the owner or lessor had full control and dominion over the item in question, it seemed logical to the court in the Miroyan case that the owner had the right to install any instrument that would not be physically dangerous to the purchaser or lessee. To the same effect (that the act of inserting the devices with the consent of the owner violated no one's constitutional rights, especially where there was no trespass into a transporting vehicle such as in the Holmes case (e.g., Dunivant placed the beepers into his car himself voluntarily, albeit unknowingly)) see, United States v. French, 414 FSupp. 800, 803-804 (WD Okla. 1976). See also Smith v. Maryland, 442 U. S. 735 (99 SC 2577, 61 LE2d 220) (1979).

Thus as we view the several district and circuit courts which have examined this problem we find Holmes standing almost alone. Two cases that adopted the Holmes logic have been overruled. See United States v. Bobisink, supra, overruled by United States v. Moore, supra, and United States v. Martyniuk, 395 FSupp. 42 (D Or 1975) overruled in 539 F2d 32 (9th Cir. 1976). Even the Holmes decision has been weakened in that the public policy foundation of that decision, while recognized as having great weight, has specifically been rejected based upon equally cogent policy reasons, in United States v. Curtis, 562 F2d 1153 (9th Cir. 1977). As was concluded in the appeal to the Martyniuk case, 539 F2d 32, at p. 34, a beeper installed in the drum of caffeine (a lawful substance but intended, upon a reasonable inference, to be used for an unlawful purpose) was nothing more than a probing, exploratory quest for evidence in which there was no reasonable expectation of privacy and thus no Fourth Amendment protection. The court there equated the quest as tantamount to the use of binoculars, tracking dogs, or searchlights as an aid in surveillance.

We are persuaded that the better rule is the one enunciated in the Debrofsky, Moore, Curtis and Martyniuk cases, supra, i.e., that the mere insertion of a beeper device either in contraband (or in or onto an otherwise lawful object) does not violate any Fourth

Amendment rights where there is no trespass involved and there exists probable cause to believe that a crime is intended. Our belief might be tempered somewhat by a case in which it is shown that there are no exigent circumstances, probable cause exists, but a trespass is involved. In such a case, perhaps a weighing by an impartial magistrate might be required to protect the invasion involved in the trespass. Such seems to be an underlying caveat in the federal cases above considered. However, we need not reach a definitive answer as to the trespassory use of a beeper because the present case did not involve a trespass.

In determining whether there was probable cause to place the beeper in the box of benzyl-chloride, we look no further and are persuaded by the reasonableness of the holding of United States v. Moore, supra, p. 113 where the court held that a call from a drug company, the discovery that the address given by the purchasers was not one where a chemical manufacturer would operate, and the nature of the chemicals purchased, in light of the agent's familiarity with the manufacture of controlled substances, together created a sufficient basis for believing that a criminal enterprise was underway. Moore, supra, p. 113 (5). The facts giving rise to probable cause in that case almost track the facts of this case. We too conclude that there was sufficient evidence to give rise to a reasonable belief that a criminal enterprise was underway. The use of electronic beepers under such circumstances does not amount to an invasion of a constitutionally protected Fourth Amendment right to privacy nor an impermissible intrusion upon protected property rights. This phase of appellants' argument is without merit.

2. Appellants next argue that the search warrant obtained from the State Court of Carroll County was improperly issued. Their first contention is that the search warrant sought the seizure of chemicals that had been in the possession of appellants for several months without any showing where those chemicals had been or that what was sought in July was indeed the same chemicals purchased in February. Thus, appellants argue that the information was stale.

This is an ingenious argument that facially has much merit. However, it ignores the reality of the situation. The evidence shows that specified chemicals had been ordered in type and quantity that were specific for the manufacture of methamphetamine, a controlled substance. Part of that order had not been filled and it was shown that the fabrication of methamphetamine was not possible without the use of the missing chemical which was part of the same order. It is reasonable to assume that if appellants had used up the chemicals delivered in February to manufacture methamphetamine prior to July, they would have ordered replacement chemicals to go with the

benzyl-chloride finally obtained in July. The only reasonable conclusion is that because the quantity of benzyl-chloride accepted was from the same purchase order and fulfilled the requirement for the originally intended manufacturing effort, the original chemicals were still in the possession of the purchasers, particularly in the absence of the new procurement of those same chemicals in July. We conclude that the language of *Stiggers v. State,* 151 Ga. App. 546, 547 (1) (260 SE2d 413), though involving a right to exercise a momentary stop, is apropos. There we held that the Fourth Amendment does not require a policeman who questions the precise level of information necessary for probable cause based upon the facts available to him to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an immediate response. We do not mean to imply here that probable cause did not exist, for we are satisfied that under the totality of the information presented to the issuing judge, the only reasonable conclusion was that what was originally intended (the manufacture of methamphetamine) finally was to be accomplished by the appellants. We hold that the information furnished the issuing judge was not stale. See *Mitchell v. State,* 239 Ga. 456, 458 (2) (238 SE2d 100).

The second basis for the contention that the search warrant was improperly issued is that certain omissions or misstatements were made that mislead the issuing judge. These omissions and mis-statements are alleged to be that the affiant did not disclose to the judge that beepers had been placed in the boxes of benzyl-chloride; that the tailing vehicles had temporarily lost contact with appellants' Blazer and had to rely on the electronic sounds to relocate the Blazer; that though the agents had had ample time to obtain judicial authorization to place the beepers in the boxes, no such authorization had been obtained; that an airplane had been used and became necessary to locate the vehicle carrying the benzyl-chloride; and, that the affiant had no positive knowledge that the chemicals delivered in February were at the Carroll County location or indeed where the chemicals had been since delivery in February.

As should be apparent from the preceding discussion of the propriety of placing the beepers in the benzyl-chloride, we have already confronted all these objections. Inasmuch as the implanting of beepers in the chemicals occurred at a time when the substance was the property of the chemical manufacturer rather than appellants, no constitutional violation ensued at the time of the insertion. As to the transfer of the boxes with the beepers to the ownership of the appellants, we have held that where there is probable cause to believe that a crime is intended or is being committed, the insertion of a

non-recording device which acts only as an aid to and in effect is an extension of the senses of the surveilling officer, such insertion is a permissible intrusion and does not amount to an invasion of an area of privacy protected by the Fourth Amendment. For the same reason, it was not a misstatement that the officers had maintained contact with the Blazer throughout the entire journey for whether it was visible or audible, the contact was maintained by one of the senses or a proper extension of one of the senses of the surveilling officers. Also, because we have held that the use of a beeper under the facts of this case was proper, it was not misleading to the magistrate not to reveal that an airplane was used or that part of the time the beepers were essential to maintain contact, or that no judicial prearrangement or authorization had been obtained to insert the beepers in the benzyl-chloride. These are simply technical descriptions of how continuous surveillance was maintained. Lastly, in our discussion of the staleness issue, we concluded that it was reasonable for the affiant to relate and the magistrate to assume that the chemicals sold in February were still in the possession of the appellants, without any additional effort by the affiant to attempt to account for the whereabouts of those chemicals throughout the period from February to July. In short, we do not agree with the contention that the magistrate was misled.

In the third facet of their argument, appellants contend that the face of the warrant fails to disclose probable cause. In support of this phase of their argument, appellants contend, cumulatively, (1) the fact that the information clearly was stale; (2) the fact that a computer check showed that Anthony had been a suspect in another state of an investigation into manufacture of methamphetamine; (3) that the Chamblee address was not a manufacturing situs; (4) that the purchase and possession of benzyl-chloride is a lawful act; and, (5) that there is no connection between the July delivery of benzyl-chloride with the February chemicals, fails either individually or in connection to establish probable cause.

We have considered each of these arguments in other contexts within this opinion, with the exception of Anthony's earlier connection with an illegal methamphetamine operation. As indicated hereinbefore, we find ample evidence to satisfy the issuing judge of the probability that an on-going crime was being committed. Thus, we find this argument also to be non-meritorious. For all the reasons expressed herein, we conclude that appellants' two enumerations of error have no merit.

*Judgments affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED MAY 5, 1980 — DECIDED SEPTEMBER 10, 1980 —

REHEARING DENIED SEPTEMBER 30, 1980 —

*Mark J. Kadish, Rhonda A. Brofman,* for appellants.
*William F. Lee, Jr., District Attorney,* for appellee.