The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

James Gaylean OATES and Ora Doyle
Kubosh, Defendants-Appellees.

No. 84SA196.

Supreme Court of Colorado,
En Banc.

May 6, 1985.

Robert L. Russel, Dist. Atty., Fourth Judicial Dist., Thomas L. Kennedy, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Stephanie H. Yukawa, John W. Cook, Ranson, Thomas, Cook & Livingston, Colorado Springs, for defendants-appellees.

DUBOFSKY, Justice.

The defendants, James Gaylean Oates and Ora Doyle Kubosh, were charged with manufacturing and possessing controlled substances, § 18–18–105, 8 C.R.S. (1984 Supp.), and with conspiracy to manufacture and possess controlled substances. § 18–2–201, 8 C.R.S. (1978). The defendants also were charged with three special offender counts. § 18–18–107, 8 C.R.S. (1984 Supp.). During the investigation leading to the charges, an agent of the Drug Enforcement Administration attached a beeper[1] to a drum of chemicals purchased by defendant Kubosh. Prior to trial, the Teller County District Court ruled that the installation of the beeper was illegal because it had not been authorized by warrant. The district court therefore suppressed all evidence seized through use of the beeper. The People appeal the suppression order under C.A.R. 4.1. We affirm the ruling of the district court as to defendant Kubosh, but remand for further findings concerning the standing of defendant Oates to challenge the legality of the search.

The defendants submitted their suppression motion upon the following stipulated facts:

---

**1.** A beeper is a miniature radio transmitter that emits signals at a set frequency; by following the signals, police officers may track the location of any item to which a beeper is attached.

On August 16, 1983, Agent Surovec of the Drug Enforcement Agency (DEA) in Houston, Texas was notified by the General Manager of American Scientific and Chemical Co. of Houston that two men had placed an order with a $200.00 deposit for 110 lbs. of phenyl-acetic acid. The two men were driving a blue Chevrolet Van registered to Defendant Kubosh. On the same day, Agent Surovec was also able to determine through DEA records that the same van had been used on January 12, 1983 to purchase 25 lbs. of sodium acetate and glassware.

On August 26, 1983, Agent Surovec received a phone call from C.A. Busbee, an Investigator for the Palo Pinto County Texas District Attorney who advised Agent Surovec that Defendant Kubosh was suspected of being involved in the manufacture of methamphetamines. On that same day, Agent Surovec placed an electronic tracking device, commonly known as a "beeper" in the 110 lb. drum of phenyl-acetic acid which had been ordered by the two individuals on August 16, 1983. The General Manager of American Scientific and Chemical Co. consented to placement of the beeper. It was determined that Defendant Kubosh was the individual who had placed the $200.00 deposit for the order on the 110 lb. drum of phenyl-acetic acid.

On September 13, 1983 at 9:00 a.m., a white male paid for and picked up the drum of phenyl-acetic acid containing the beeper. Monitoring of the beeper disclosed that the drum was transported in a 1980 Pontiac Gran Prix to the residence of Defendant Kubosh. Later the Pontiac was driven to another location followed by a 1976 white Ford Van. By means of the beeper, it was learned that the drum was transferred from the Pontiac to the white Ford Van. Monitoring of the drum in the van was continued until 6:00 p.m. the same day, then surveillance was lost in the area of Wichita Falls, Texas. The signal was picked up later that evening and it was determined that the drum and van were headed to Colorado.

Surveillance continued until September 14th when the signal was lost again as the van turned off I–25 to Hwy 24 West at the Manitou Springs Exit. Later on that same day, the signal was picked up near Divide, Colorado. On September 16, 1983, the drum, through monitoring of the beeper, was located at 109 Spring Valley Circle in Teller County. Agent Fagan drove by the address and observed the van in a detached garage. He also reported smelling a very strong odor synonomous with an amphetamine lab. On September 18, 1983, law enforcement obtained and executed a search warrant for 109 Spring Valley Circle and the vehicles located there.[2]

The defendants moved to suppress all evidence seized during execution of the search warrant, contending that the warrantless installation and monitoring of the beeper constituted an illegal search and seizure, and that the seized evidence was a fruit of this illegal conduct.[3] The district court granted the motion, ruling that the warrantless beeper installation[4] violated

---

2. The parties further stipulated at oral argument that monitoring of the beeper was discontinued after the drum of chemicals arrived at the Spring Valley address.

3. The connection between the use of the beeper and the evidence seized during execution of the warrant was not set forth clearly in either the defendants' motion or the district court order. Presumably the evidence was suppressed because information obtained through use of the beeper was recited in the search warrant affidavit, and the affidavit failed to state probable cause once this information was excised. However, because the People do not challenge this aspect of the court's ruling, we need not determine the connection between the beeper search and the seized items.

4. The district court also ruled, based on *United States v. Knotts*, 460 U,S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), that subsequent monitoring of the beeper was not a search under the United States or Colorado Constitutions. Because C.A.R. 4.1 only permits review of rulings adverse to the People, we do not pass upon the district court's monitoring ruling here. However, in order to analyze the invasion of privacy occasioned by the installation of a beeper, we must refer to its purpose—the tracking of location and movement. It is by virtue of this

the defendants' rights under the fourth amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. We agree with the district court that defendant Kubosh, who at least partially paid for and took possession of the drum containing the beeper, possessed a legitimate expectation of privacy in that drum, and that the warrantless installation and continued presence of the beeper constituted an illegal intrusion upon that expectation of privacy under article II, section 7 of the Colorado Constitution. Therefore, we affirm the suppression order as to defendant Kubosh. However, the record is silent regarding any connection between defendant Oates and the drum of chemicals; we therefore remand for a determination of whether the installation of the beeper invaded any legitimate expectation of privacy possessed by defendant Oates.

## I.

Article II, section 7 of the Colorado Constitution states:

> The People shall be secure in their persons, papers, houses and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

This provision shares a common purpose with the fourth amendment to the United States Constitution: the protection of legitimate expectations of privacy from unreasonable governmental intrusion. *Katz v. United States,* 389 U.S. 347, 350–52, 88 S.Ct. 507, 510–12, 19 L.Ed.2d 576 (1967); *People v. Sporleder,* 666 P.2d 135, 139 (Colo.1983). Therefore, any governmental action intruding upon an activity or area in which one holds such an expectation of privacy is a "search" that calls into play the protections of the Colorado Constitution. Whether an expectation of privacy is "legitimate" is determined by a two-part

inquiry: whether one actually expects that the area or activity subjected to governmental intrusion would remain free of such intrusion, and whether "that expectation is one that society is prepared to recognize as reasonable." *Sporleder,* 666 P.2d at 140; *see also Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (employing same test under fourth amendment).

In the present case, the People concede that the defendants possessed an actual expectation of privacy in the drum of chemicals and contend only that this expectation was not reasonable. We consider the People's contention under both the Colorado and United States Constitutions.

## II.

The United States Supreme Court has applied the "legitimate expectation of privacy" test to beeper installation and monitoring on two recent occasions. In *United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), police officers attached a beeper to a drum of chloroform and visually tracked the movements of the automobile into which the drum had been placed. When visual contact with the automobile was lost, officers followed its movements by monitoring the beeper. The Court held that such surveillance did not constitute a search because "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." 103 S.Ct. at 1085. The Court explicitly refrained from deciding whether the installation of a beeper, apart from monitoring, would require a warrant. *Id.* at 1084 n. * *.

A year later, the Court addressed the installation issue. In *United States v. Karo,* —— U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), a beeper was placed into a drum of ether belonging to the Drug Enforcement Administration (DEA). The defendants purchased the drum from a third party, and the beeper was used both

ultimate use that the initial installation threat-

ens constitutionally-protected privacy.

to track the movements of the drum on public roads and to locate the drum inside a number of private homes and storage facilities. The Court first held that the installation of the beeper did not violate the defendants' legitimate expectation of privacy because at the time of installation the drum was owned by the DEA. *Id.* at 3301. The Court also concluded that the transfer of the drum did not constitute a "search":

A "search" occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. ——, —— [104 S.Ct. 1652, 1656, 80 L.Ed.2d 85] (1984). The mere transfer to Karo of a can containing an unmonitored beeper infringed no privacy interest. It conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a *potential* for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment. A holding to that effect would mean that a policeman walking down the street carrying a parabolic microphone capable of picking up conversations in nearby homes would be engaging in a search even if the microphone were not turned on.

*Id.* 104 S.Ct. at 3302 (emphasis in original). Nor did the installation and presence of the beeper constitute a "seizure," as there was no "meaningful" interference with a pos-sessory interest; at most, the Court declared, a "technical trespass" occurred. *Id.* at 3302. The Court determined, however, that the use of the beeper to locate the drum inside a residence constituted a search requiring a warrant, even if police officers visually observed the item containing the beeper being taken into the house. *Id.* at 3303–04. In such circumstances, the Court reasoned, the beeper reveals information that would otherwise remain concealed and thereby infringes upon a legitimate expectation of privacy.[5] *Id.*

 Under *Karo,* the installation and presence of the beeper in this case was not a search. However, in interpreting article II, section 7 of the Colorado Constitution, we are not bound by the decisions of the United States Supreme Court construing the federal constitution. Several times we have determined that the Colorado proscription against unreasonable searches and seizures protects a greater range of privacy interests than does its federal counterpart. *People v. Corr,* 682 P.2d 20 (Colo.), *cert. denied,* —— U.S. ——, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984) (governmental use of telephone toll records is search under Colorado Constitution); *Sporleder,* 666 P.2d 135 (governmental installation of pen register is search under Colorado Constitution); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980) (governmental use of bank records is search under Colorado Constitution). We conclude that the broader definition of what constitutes a

---

**5.** The record in the instant case indicates that defendant Kubosh owned the house at 109 Spring Valley Circle. After law enforcement officers lost the signal from the beeper at the Manitou Springs exit off I–25, use of a DEA aircraft picked up the signal near Divide, Colorado. Subsequent monitoring of the beeper while the drum presumably was in the house or garage eventually disclosed the drum's location. Under *Karo,* the unwarranted monitoring of the beeper in Kubosh's house or garage could well foreclose using against him evidence discovered because of the beeper. However, the United States Supreme Court had not decided *Karo* at the time the district court ruled in this case. Although the district court ruled that the monitoring of the beeper here did not require a warrant, *see* note 4 *supra,* the court was not asked to address, and did not consider, whether law enforcement monitoring of the beeper when the drum was located inside 109 Spring Valley Circle, as distinct from monitoring of the drum on public highways, violated the defendants' legitimate expectation of privacy. Under *Karo,* this issue doubtless would arise, and the district court's ruling on the monitoring issue might well be different. Nevertheless, because this ruling was adverse to the defendant, we have no jurisdiction to address it in an interlocutory appeal under C.A.R. 4.1. *People v. Barton,* 673 P.2d 1005, 1006 n. 1 (Colo.1984); *People v. McNulty,* 173 Colo. 491, 480 P.2d 560 (1971). Therefore, although the evidence in this case may well be suppressible under *Karo,* the suppression questions are not in a procedural posture for us to address them under the *Karo* rationale.

legitimate expectation of privacy under the Colorado Constitution encompasses the expectation that purchased commercial goods will be free of government surveillance devices such as beepers. We therefore depart from the reasoning in *Karo* and hold that the installation and continued presence of the beeper in this case infringed upon the legitimate expectations of privacy of at least one defendant, and therefore constituted a search requiring a warrant under article II, section 7 of the Colorado Constitution.

### III.

■ A search occurs when the legitimate expectations of privacy of a particular individual or individuals are violated, and only such individuals have standing to challenge the government practice at issue. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Spies*, 200 Colo. 434, 436, 615 P.2d 710, 711 (1980). Because the legitimacy of each individual's expectation of privacy depends upon his relationship to the area searched or items seized, *People v. Naranjo*, 686 P.2d 1343, 1345 (Colo.1984), and because each defendant in this case bore a different relationship to the drum of chemicals, we examine the issue before us—the reasonableness of the defendants' expectation of privacy under the Colorado Constitution—separately as to each defendant. We turn first to defendant Kubosh.

### A.

■ Whether an expectation of privacy is reasonable may be tested against the customs, values and common understandings that confer a sense of privacy upon many of our basic social activities. *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430–31 n. 12; *People v. Suttles*, 685 P.2d 183, 190 (Colo.1984). Government surveillance necessarily reduces this sense of privacy; many citizens may choose to curtail their freedom of action rather than risk exposure of their activities to government scrutiny. 1 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*

§ 2.1 at 231–33 (1978) (hereinafter "La-Fave"); Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 348, 402–03 (1974) (hereinafter "Amsterdam"). Where, as a result of a government surveillance practice, "the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society," Amsterdam at 403, a court may require regulation of the government practice by means of a warrant.

■ In the present case, defendant Kubosh had partially paid for the drum of chemicals at the time the beeper was installed. He also took possession of the drum. Among the most common understandings of our society is the expectation that the owner or possessor of private property retains the exclusive power to use and dispose of his goods as he sees fit. The "right to exclude" has often been viewed as the crucial factor that grants a legitimate expectation of privacy in an area that has been subject to police intrusion. *Rawlings v. Kentucky*, 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas*, 439 U.S. at 144 n. 12, 149, 99 S.Ct. at 431 n. 12, 433; *see Naranjo*, 686 P.2d at 1345 (possessory or proprietary interest in area searched or item seized important factor in determining whether legitimate expectation of privacy violated); *see generally*, Slobogin, *Capacity to Contest a Search and Seizure: The Passing of Old Rules and Some Suggestions for New Ones*, 18 Am.Crim.L.Rev. 387 (1981). For this reason, we consistently have held that the owner or possessor of a sealed container possesses a legitimate expectation of privacy in its contents. *E.g., People v. Hines*, 195 Colo. 71, 575 P.2d 414 (1978) (search of backpack); *People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977) (search of tinfoil package). Government installation of a beeper in a drum of chemicals, a sealed container, violates the owner's expectation of privacy, and the violation continues through the time that the purchaser of the drum takes

possession.[6] Such a violation is not merely a "technical trespass," *Karo,* 104 S.Ct. at 3302; rather, the invasion is one that significantly impairs the privacy associated with privately-owned goods. Placement of the beeper inside the drum of chemicals converted that drum to a government use unintended by the owner, and in so doing insinuated a government presence into a sealed container from which the owner had, by custom and law, the right to exclude the world. As one court has written concerning the placement of a beeper into a vehicle:

> In a very real sense, the beeper serves as a surrogate police presence that remains within the vehicle's interior and converts the area into a covert broadcasting station. Given the capacity of such devices to impart information, the introduction of these government-controlled objects into an area in which an individual legitimately retains an expectation of privacy constitutes an offensive invasion of fourth amendment values. The government, via its electronic counterpart, remains physically present within the interior of the vehicle from the moment its agents enter until the tracking device ceases to function.

*United States v. Butts,* 710 F.2d 1139, 1149 (5th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984); *accord State v. Hendricks,* 43 N.C.App. 245, 258 S.E.2d 872, 878 (1979); Note, *Tracking Katz: Beepers, Privacy and the Fourth Amendment,* 86 Yale L.J. 1461, 1485 (1977) (hereinafter "Note"). We do not believe that the privacy values that customarily attend the purchase of commercial goods in a sealed container countenance such an invasion.

Although the government entry into the sealed container here was not for the purpose of searching the contents of the container, as occurred in the searches in *Hines* and *Casias,* the invasion of privacy occasioned by the entry is not any less significant. A beeper searches the location of property; this information may be as private as the contents of a container. A beeper may reach into places concealed from public°view—for example, the interiors of homes or the trunks of automobiles—and reveal to the government that a particular item may be found there, just as if a government agent had entered the premises in person. *See Karo,* 104 S.Ct. at 3303–04 (entry of beeper into home is search); *see also United States v. Holmes,* 521 F.2d 859, 865 n. 11 (5th Cir.1975), *aff'd by an equally divided court* 537 F.2d 227 (5th Cir.1976) (en banc) (no difference between presence of beeper and presence of government agent). Equally important, a beeper permits the government to monitor the movements of both the item to which the beeper is attached and the person or persons having possession of the item, since "items of personal property seldom travel on their own accord...." *United States v. Karo,* 710 F.2d 1433, 1438 (10th Cir.1983), *rev'd,* —— U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). Knowing the movements of an item and its possessor may permit the government to reconstruct "a virtual mosaic of a person's life," *Sporleder,* 666 P.2d at 142, including one's habits, habitats and associates.

It is no answer to the dangers posed by government beepers to suggest, as did the Court in *Knotts,* that beepers may often reveal information available to visual observers. A beeper has utility to law enforcement officials only to the extent that it performs functions that visual observers cannot perform: following lengthy or

---

**6.** We do not believe, as some courts have held, that the consent of the seller or lessor of goods validates the invasion that occurs when the goods are transferred to the purchaser or lessee. *E.g., United States v. Bruneau,* 594 F.2d 1190 (8th Cir.), *cert. denied* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979). As the Court of Appeals noted in *Karo,* "The consent of one owner to have a beeper installed cannot suffice to continue the installation once the item belongs to someone else any more than the consent of a previous owner of a suitcase could suffice to permit the police to periodically open and search the suitcase after it comes under the ownership of another." *United States v. Karo,* 710 F.2d 1433, 1439 (10th Cir.1984), *rev'd,* —— U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).

evasive movement, for example, or tracking routes through secluded areas. *Holmes*, 521 F.2d at 866 n. 13; 1 LaFave § 2.7 at 157–58 (1985 Supp.); Note at 1491–95. In *Sporleder*, we rejected the notion that it is reasonable to permit unrestrained government collection of the telephone numbers one dials simply because the telephone company already possesses this information, noting that "[t]he mere fact that 'our ordinary social intercourse, uncontrolled by government, imposes certain risks upon us hardly means that government is constitutionally unconstrained in adding to those risks.'" 666 P.2d at 141, *quoting* Amsterdam at 406. Here, too, we cannot accept the additional intrusion that occurs when information revealed to private observers becomes the subject of comprehensive governmental electronic surveillance.

We are not content, as was the Court in *Karo*, to view the actual installation of the beeper as constitutionally insignificant apart from subsequent monitoring. In *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967), the Court held that, where police officers install a listening device inside a private home, the legitimate privacy expectations of the homeowner are violated even though the homeowner is not present during any monitored conversation. "The rights of the owner of the premises are as clearly invaded when the police enter and install a listening device in his house as they are when

the entry is made to undertake a warrantless search for tangible property...." *Id.* at 179–80, 89 S.Ct. at 969–70. The crucial invasion of privacy occurs when entry is effected for the purpose of making a search; it is not necessary that the entry produce information in order to violate the sense of security protected by the constitutional proscription against unreasonable searches and seizures. As Justice Stevens has pointed out, the entry of an intruder is an invasion of privacy even when the intruder is blindfolded. *Karo*, 104 S.Ct. at 3314 n. 11 (Stevens, J., concurring and dissenting). *See Holmes*, 521 F.2d at 866 (because police officers intend to gather evidence at time of beeper installation, installation is search).

 We therefore hold that the legitimate privacy expectation of one with a proprietary or possessory interest in a commercially-purchased item is violated under article II, section 7 of the Colorado Constitution whenever the item contains a government-installed beeper. Before the item is purchased, or before anyone otherwise acquires a legitimate expectation of privacy in the beeper-laden item, the government must secure a search warrant authorizing the installation of the beeper.[7] As a practical matter, this means that the government generally should obtain a warrant prior to installation of the beeper, for the placement of the beeper becomes a search at the moment the item is transferred to the person challenging the search.[8]

---

7. Because the People bear the burden of proving that any search is exempt from the warrant requirement, *People v. Lorio*, 190 Colo. 373, 377, 546 P.2d 1254, 1257 (1976), we presume that a search is illegal unless accompanied by a warrant. We do not believe that requiring the police to obtain a warrant hinders the investigation of illegal drug trafficking. A warrant requirement does not prevent the installation of beepers; it only requires that prior to an invasion of privacy, the police present facts to a neutral magistrate that would warrant "a person of reasonable caution to believe that contraband or material evidence of criminal activity is to be found on the premises...." *People v. Hill*, 690 P.2d 856, 859 (Colo.1984). Thus, police officers may install beepers where a demonstrably legitimate investigative need exists; only where the law enforcement interest cannot be shown to

justify an invasion of privacy will beeper placement be prevented. The United States Supreme Court recognizes that the warrant requirement accommodates legitimate law enforcement interests: "These long-prevailing standards [of probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy.... They also seek to give fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). In this case, the People have not argued that any standard less than probable cause could validate the installation of a beeper if the installation constitutes a search.

8. In *Karo*, the United States Supreme Court noted that "warrants for the installation and monitoring of a beeper will obviously be desirable

Here, no warrant was obtained; the beeper placement therefore was an illegal search as to defendant Kubosh, who had partially purchased and taken possession of the drum of chemicals. *See People v. Savage*, 630 P.2d 1070, 1073 (Colo.1981) (one of four persons sharing rent and occupancy of trailer has standing to challenge search of trailer).

### B.

 With respect to the reasonableness of defendant Oates' expectation of privacy, there is nothing in the record about the relationship of defendant Oates to the chemical drum. We therefore remand for the district court to determine whether the installation of the beeper violated Oates' legitimate expectations of privacy. We do not suggest that ownership of the drum is the sole means by which one might acquire an expectation of privacy in its use. *See, e.g., Rakas,* 439 U.S. at 149, 99 S.Ct. at 433 (permissive use of apartment may give rise to legitimate expectation of privacy); *Naranjo,* 686 P.2d at 1346 (bailee of car has standing to contest search). In addition, one lacking any expectation of privacy in the drum itself may nonetheless suffer an invasion of privacy through law enforcement monitoring of the beeper if the beeper enters his residence or otherwise monitors information that he reasonably would expect to remain private. *See Karo,* 104 S.Ct. at 3303–04; *Katz,* 389 U.S. at 351–53, 88 S.Ct. at 511–12. Ultimately, any determination that a legitimate expectation of privacy has been violated must be based upon the totality of circumstances surrounding the search and seizure. *Spies,* 200 Colo. at 440, 615 P.2d at 714.

The suppression order is affirmed as to defendant Kubosh. The case is remanded to the district court for a determination of whether defendant Oates had standing to seek the suppression order.

ERICKSON, C.J., dissents and ROVIRA, J., joins in the dissent.

ROVIRA, J., dissents.

ERICKSON, Chief Justice, dissenting:

I respectfully dissent.

In my view, the placement of a beeper inside the drum of chemicals did not, under the facts of this case, constitute a "search" within the meaning of either the fourth amendment of the United States Constitution or article II, section 7 of the Colorado Constitution. I would therefore reverse the order of the Teller County District Court.

### I.

The greater part of the majority opinion deals with an issue which, in my opinion, is irrelevant to this appeal. The majority correctly acknowledges that the question of whether the police violated the defendants' constitutional rights by monitoring the beeper is not properly before us. However, the majority then proceeds to devote a substantial portion of its analysis to a detailed discussion of the dangers associated with monitoring a beeper after it has been installed. At 816–18. Addressing the monitoring issue obscures the sole issue presented for our determination: Whether the initial installation of a beeper inside the drum of chemicals—aside from its subsequent monitoring—impinges upon a privacy right protected by the fourth amendment or article II, section 7 of the

since it may be useful, even critical, to monitor the beeper to determine that it is actually located in a place not open to visual surveillance." 104 S.Ct. at 3302 n. 3. The Court also took note of the government's argument that its holding, as a practical matter, would force police officers to obtain warrants prior to installation of a beeper, and observed, "The argument that a warrant requirement would oblige the Govern-

ment to obtain warrants in a large number of cases is hardly a compelling argument against the requirement." 104 S.Ct. at 3305. It is thus apparent that safe compliance with the dictates of *Karo* will require the police to obtain a warrant prior to installation. Given this outcome, we do not foresee that our holding today will subject police officers to confusing and inconsistent standards of conduct.

Colorado Constitution.[1] I submit that it does not.

## A.

A search occurs for purposes of article II, section 7 when the government infringes upon an expectation of privacy that society considers "reasonable." *See People v. Becker*, 188 Colo. 160, 533 P.2d 494 (1975); *People v. Weisenberger*, 183 Colo. 353, 516 P.2d 1128 (1973). The defendants here did not possess a reasonable expectation of privacy in the drums at the time Agent Surovec installed the beeper. The record reveals that Agent Surovec installed the beeper while the drums were under the exclusive dominion and control of the chemical company. The record contains no evidence that the drums had been identified or otherwise set aside for the defendants' use. Although the defendants had made partial payment for the chemicals, that fact, by itself, does not create a reasonable expectation of privacy in commercial goods. *United States v. Hufford*, 539 F.2d 32 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976) (partial payment for drum of chemicals did not establish reasonable expectation of privacy).

Moreover, Agent Surovec installed the beeper with the express consent and permission of the general manager of the chemical company. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Given these facts, it is clear to me that the warrantless installation of the beeper inside the drum did not violate the defendants' constitutional rights. *Accord United States v. Karo*, ─── U.S. ───, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *United States v. Bruneau*, 594 F.2d 1190 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct.

94, 62 L.Ed.2d 61 (1979); *United States v. Botero*, 589 F.2d 430 (9th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *United States v. Moore*, 562 F.2d 106 (1st Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *Dunivant v. State*, 155 Ga.App. 884, 273 S.E.2d 621 (1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *cf. United States v. Dubrofsky*, 581 F.2d 208 (9th Cir.1978).

Nor do I agree with the majority that the mere transfer of the drum of chemicals containing an unmonitored beeper infringes upon any privacy right protected by article II, section 7. As the Supreme Court stated in *Karo:*

> The mere transfer to [the defendant] of a can containing an unmonitored beeper infringed no privacy interest. It conveyed no information that [the defendant] wished to keep private, for it conveyed no information at all. To be sure, it created a *potential* for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment. A holding to that effect would mean that a policeman walking down the street carrying a parabolic microphone capable of picking up conversations in nearby homes would be engaging in a search even if the microphone were not turned on.

104 S.Ct. at 3302 (emphasis in original). Any invasion of the defendants' privacy did not occur until the beeper was actually monitored by the agents. I would therefore conclude that the mere placement of the unmonitored beeper inside the drum did not implicate any privacy right protected by article II, section 7.

---

1. In determining whether the use of a beeper constitutes a search for purposes of the fourth amendment, most courts have used a "bifurcated analysis" and have treated the installation or attachment of the beeper separately from the constitutional implications associated with monitoring its signals. *United States v. Bruneau*, 594 F.2d 1190, 1194 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979); *United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 18, 58 L.Ed.2d 45 (1973); *see also* Note, *Electronic Tracking Devices & Privacy: See No Evil, Hear No Evil, But Beware of Trojan Horses*, 9 Loy.Chi. L.J. 227, 236 (1977).

### B.

Even assuming that the warrantless installation of the beeper did constitute a "search" for purposes of article II, section 7, I would nevertheless uphold the search using a standard less stringent than probable cause. The majority's requirement that the police must obtain a search warrant supported by probable cause is overly restrictive in light of the limited intrusion into privacy that is involved. I would therefore favor the application of a reasonable or articulable suspicion standard to measure the reasonableness of the police officer's conduct. In this case, the police had more than an articulable suspicion before the beeper was installed.

In my opinion, the majority greatly overstates the intrusion into privacy caused by the installation of an unmonitored beeper into a drum of chemicals. At 817. Unlike a microphone or other wiretap device,[2] a beeper is incapable of transmitting oral communications. A beeper merely emits a signal which, when monitored, enables law enforcement agents to know when the beeper is nearby.[3] The intrusion into privacy caused by the installation of a beeper hardly compares to the invasion of privacy associated with the more traditional search of a person or his effects. *Compare United States v. Karo*, —— U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) *with People v. Hines*, 195 Colo. 71, 575 P.2d 414 (1978) (search of backpack) and *People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977) (search of tinfoil package).

At the very most, I would consider the installation of a beeper inside a drum of chemicals to be a minor intrusion against which legitimate law enforcement interests need to be balanced. Electronic tracking devices serve as invaluable tools to law enforcement officials in their efforts to trace a drug manufacturing operation to its source. The illusive and surreptitious nature of drug trafficking often makes it difficult for law enforcement officials to obtain sufficient information to establish probable cause for a search warrant.

Given the minimal intrusion caused by the use of a beeper, I would therefore favor using a reasonable or articulable suspicion standard in cases involving the installation of electronic tracking devices. *Cf. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (pat down search reasonable if supported by a reasonable and articulable suspicion of criminality); *United States v. Brignoni-Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975) (roving patrol traffic stop justified on standard less stringent than probable cause on grounds that fourth amendment interest was "modest" while stop served significant law enforcement needs); *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (reasonable and articulable suspicion appropriate standard with respect to health and safety inspection of private premises).

A standard based on articulable suspicion would enable law enforcement officials to install a tracking device only when their investigation had focused on a particular individual as a suspect in a criminal transaction. Arbitrary and discriminatory practices would be minimized by such a standard while the legitimate needs of law enforcement officials would be recognized.

The majority's requirement that the police must obtain a search warrant supported by probable cause prior to installing a beeper in a drum of chemicals does very little to protect citizens of Colorado against unreasonable searches and seizures.[4] At

---

**2.** A beeper is not classified as a wiretap device. *See* 18 U.S.C. § 2510(5); *see also United States v. Moore*, 562 F.2d 106 (1st Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978).

**3.** Contrary to the majority's suggestions, at 817, beepers do not allow law enforcement officials to obtain a pinpoint fix of where the beeper is located at any particular time. The

majority's suggestion that by monitoring a beeper signal the government can reconstruct a "virtual mosaic of a person's life" is, in my opinion, not consistent with the state of the art. At 817.

**4.** The majority asserts that resort to the warrant process is necessary to protect citizens against unreasonable searches and seizures. At 818–819, n. 8. An expanded warrant system, however, might very well reduce the warrant process to

the same time, the majority opinion deals a crippling blow to law enforcement officials in their efforts to prosecute those "who traffic in illegal drugs for personal profit." *Florida v. Royer*, 460 U.S. 491, 508, 103 S.Ct. 1319, 1329–30, 75 L.Ed.2d 229 (1983) (Powell, J., concurring).

## II.

I also disagree with the majority's use of the Colorado Constitution to avoid the analysis of *United States v. Karo*. In *People v. Sporleder*, 666 P.2d 135, 149–50 (Colo. 1983), I outlined in detail, by way of dissent, the reasons why a state court should be hesitant in interpreting nearly identical language in a state constitution to that in the federal constitution differently in an effort to reach a conclusion that is different from a square holding of the United States Supreme Court. While I believe that the Colorado Constitution must ultimately be interpreted by the Colorado Supreme Court, I do not believe that this court should depart from United States Supreme Court decisions interpreting identical language in the federal constitution without principled reasons for doing so. *People v. Timmons*, 690 P.2d 213, 218 (Colo.1985) (Erickson, C.J. dissenting); *see also* McGraw, *Developments in State Constitutional Law: The Williamsburg Conference* (1985). I am troubled by the majority's failure to articulate any intent on the part of the framers of the Colorado Constitution or any circumstances unique to this state that would justify a result different from that reached in *Karo*. As I stated in *Sporleder*, "[c]ourts which fail to explain important divergences from precedent run the risk of being accused of making policy decisions based on subjective result-oriented reasons." 666 P.2d at 149. See also *People v. Disbrow*, 16 Cal.3d 101,

545 P.2d 272, 127 Cal.Rptr. 360 (1976) (Richardson, J., dissenting) ("[S]omething more than personal disagreement by a majority of members of a state court with a decision of the [Supreme Court] is required if the persuasion of that court is not be followed").

The present case illustrates why departure from decisions of the United States Supreme Court should be the exception and not the rule. As the facts in this case demonstrate, the manufacturing and distribution of illegal narcotics presents a problem of federal dimension. The activities of the Drug Enforcement Administration (DEA) cover fifty states and numerous foreign countries. A beeper lawfully installed in one jurisdiction without a warrant may ultimately be traced to another jurisdiction where a warrant is required. Federal drug agents cannot, and should not, be expected to know the individual constitutional requirements in each and every state. Because of the need for uniformity in the law, decisions of the United States Supreme Court that directly affect interstate drug trafficking should be approached with deference.

The majority decision does very little to aid federal law enforcement officers in their efforts to ascertain and comply with constitutional requirements. Instead, the majority's resolution of this appeal adds additional uncertainty to an already confused state of the law regarding the installation and monitoring of electronic signalling devices. *Compare United States v. Holmes*, 521 F.2d 859 (5th Cir.1975), *aff'd by an equally divided court*, 537 F.2d 227 (5th Cir.1976) (*en banc*) and *State v. Hendricks*, 43 N.C.App. 245, 258 S.E.2d 872 (1979) *with Dunivant v. State*, 155 Ga.App. 884, 273 S.E.2d 621 (1980), *cert. denied*, 450

nothing more than a mechanical process requiring only shadow compliance. As stated by Professor LaFave:

> [U]se of the warrant process to deal with police practices which pose only a "minor peril to Fourth Amendment protections" might itself tend to reduce the sense of responsibility which magistrates have concerning their police-supervision role. It may well

be, therefore, that as a practical matter the warrant process can serve as a meaningful device for the protection of Fourth Amendment rights only if used selectively to control those police investigative activities which have the potential to be most destructive of Fourth Amendment values.

1 W. LaFave, *Search & Seizure* § 2.1, 240 (1978).

U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981) and *United States v. Bernard,* 625 F.2d 854 (9th Cir.1980). Because I can see no principled reason for departing from the rationale of *Karo,* I would reverse the district court's order suppressing the evidence.

### III.

I also disagree with the majority's conclusion that suppression of the evidence seized through the use of the beeper is necessary to effectuate the purposes of article II, section 7. The exclusionary rule is not a personal constitutional right, but is a judicially created remedy designed to deter illegal police behavior. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *People v. Deitchman,* 695 P.2d 1146, 1153 (Erickson, C.J., concurring).

The policy of deterrence is not furthered if a police officer believes in good faith that his conduct is lawful and reasonable. *See People v. Corr,* 682 P.2d 20, 32 (Colo.), *cert. denied,* — U.S. —, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984) (Erickson, C.J. dissenting). In my view, a good faith exception is especially appropriate in cases of first impression where the police have no judicial guidance and no reason to believe their conduct is constitutionally deficient. *Sporleder,* 666 P.2d at 151 (Erickson, C.J. dissenting); *cf.* § 16–3–308(2)(b), 8 C.R.S. (1984 Supp.). Here, the constitutional implications of installing a tracking device inside a sealed container had never been addressed by a Colorado court when Agent Surovec installed the beeper. In addition, numerous federal courts had considered the issue and had held that the warrantless installation of a beeper inside a drum of chemicals does not implicate any protectable interest under the fourth amendment. *See, e.g., United States v. Moore,* 562 F.2d 106 (1st Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978) (use of beeper did not violate fourth amendment even though installed without a warrant); *United States v. Bernard,* 625 F.2d 854 (9th Cir.1980) (installation of beep-

er not a search within meaning of fourth amendment); *United States v. Bruneau,* 594 F.2d 1190 (8th Cir.) *cert. denied,* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979) (installation and transfer of beeper in containers not a search under fourth amendment).

Law enforcement officials are entitled to rely upon federal decisions and should not have to anticipate that a federally guaranteed constitutional right will be given a broader interpretation under a similar provision in a state constitution. *See Corr,* 682 P.2d at 33 (Erickson, C.J., dissenting).

The majority opinion ignores the deterrent rationale of the exclusionary rule and merely applies the rule in a mechanical and inappropriate fashion.

### IV.

On remand, the majority has directed that the district court determine whether Oates has standing to seek the suppression order. In my view, the automatic standing rule announced in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), is no longer recognized.

Standing to seek relief from alleged violations of the fourth amendment was materially limited in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and has been further restricted by *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Under federal standards, Oates would not have standing to seek relief in this case and I would, therefore, not remand the case for a further hearing.

I therefore respectfully dissent.

I am authorized to say that Justice ROVIRA joins me in this dissent.

ROVIRA, Justice, dissenting:

Although I join the Chief Justice in his dissent, I write separately to express my concern and disagreement with the basic concept underlying the majority opinion. That concept is that article II, section 7, of

the Colorado Constitution,[1] which is substantially identical to the fourth amendment of the United States Constitution,[2] should be interpreted so as to confer greater rights on defendants in criminal cases than the United States Supreme Court confers based on its interpretation of the fourth amendment.

Over the past several years, this court has evidenced disagreement with certain opinions of the United States Supreme Court dealing with search and seizure and the exclusion of evidence. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (expectation of privacy which customer had in his bank records was forfeited when he disclosed the information to the bank in the course of his bank transactions); *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (subjective expectation of privacy in telephone numbers dialed not one that society is prepared to recognize as reasonable, therefore no fourth amendment violation occurred in installation and use of pen register). Today, *United States v. Karo*, — U.S. —, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), must be added to the list of United States Supreme Court decisions with which this court disagrees.

As a result of this disagreement, this court has looked to article II, section 7, of the Colorado Constitution to expand the rights of persons who have been charged with a crime. The court has searched for and found some meaning within those words which permits a more expansive interpretation than is accorded by the United States Supreme Court to similar words in the fourth amendment.

In *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980), the court recognized that although *United States v. Miller* held there was no reasonable expectation of privacy in bank records under the fourth amendment, such an expectation does arise under article II, section 7. The basis for this conclusion was that the reasonable expectation of privacy test of *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), had been applied in Colorado to limit governmental searches and seizures, and that two state courts, Pennsylvania and California,[3] had concluded there was an expectation of privacy in bank records.

In *People v. Sporleder*, 666 P.2d 135 (Colo.1983), the court, believing that the rationale of *Charnes v. DiGiacomo* applies in a comparable manner to the pen register record of telephone calls, found the reasoning of the United States Supreme Court in *Smith v. Maryland* unconvincing, and concluded that article II, section 7, of the Colorado Constitution offered the defendant an expectation of privacy in telephone numbers dialed that was not found in the fourth amendment by the United States Supreme Court.

In *People v. Corr*, 682 P.2d 20 (Colo.), *cert. denied*, — U.S. —, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984), the court, relying on *Sporleder*, found an expectation of privacy in telephone toll records, and therefore concluded that a warrant was necessary before such records could be obtained from the telephone company.

1. The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.
Colo. Const. art. II, § 7.

2. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.

3. *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980); *Burrows v. Superior Court*, 13 Cal.3d 238, 529 P.2d 590, 118 Cal.Rptr. 166 (1974). *Contra Smith v. State*, 283 Md. 156, 389 A.2d 858 (1978), *aff'd*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (no expectation of privacy in phone records).

This court's search for and discovery of more rights for individuals accused of criminal conduct under article II, section 7, than under the fourth amendment was not based on a thorough analysis of the Colorado Constitution. In neither *DiGiacomo, Sporleder* nor *Corr* was there any review of the Colorado constitutional convention to ascertain whether the intent of the drafters of article II, section 7, was any different from that of those who drafted the fourth amendment. There was not and has not been any careful analysis of the text of article II, section 7, as compared to the text of the fourth amendment, which suggests or mandates that a different meaning should be ascribed to the Colorado constitutional provision. There was not and has not been any careful tracing of historical development to support the journey which the court embarked on in *Charnes,* and followed in *Sporleder* (Erickson, C.J. and Rovira, J., dissenting) and *Corr* (Erickson, C.J., and Rovira, J., dissenting).

The effect of the majority opinion is to continue the development of parallel and conflicting search and seizure law, and to add another level of uncertainty to an already complex area of the law. Such conflict breeds confusion on the part of law enforcement officers, and frustration and perplexity in the mind of the public as to what the law is. The law of search and seizure and the accompanying exclusionary rule is difficult enough to apply with but one line of authority to follow—that of the United States Supreme Court. To add a separate line of authority under the state constitution compounds the difficulty immeasurably.

This court must ultimately be the final interpreter of the Colorado Constitution. *City and County of Denver v. Nielson,* 194 Colo. 407, 572 P.2d 484 (1977); *People v. Hoinville,* 191 Colo. 357, 553 P.2d 777 (1976). However, in the law of search and seizure, where the federal and state constitutional provisions are almost identical, we should not develop parallel but different standards. It is important to our judicial system, and to society, that certainty exist in the ground rules of search and seizure

and in the application of the exclusionary rule. Appropriate deference to decisions of the United States Supreme Court will assist in obtaining this certainty. Since there is little difference in the language of article II, section 7, and the fourth amendment, I believe that we should accept the interpretation by the United States Supreme Court of the fourth amendment unless conditions unique to Colorado support a different meaning.

The majority in the case at bar has not demonstrated that there are any unique Colorado conditions which warrant establishing a separate body of Colorado search and seizure law. Without such a demonstration, evidence should not be suppressed in a state court under the state's constitution where the same evidence would be admissible in the federal district court, located in that state, under the United States Constitution.

I agree with the observation made by Justice Richardson in his dissent in *People v. Disbrow,* 16 Cal.3d 101, 119, 545 P.2d 272, 284, 127 Cal.Rptr. 360, 372 (1976), when he said:

In my view, in the absence of very strong countervailing circumstances we should defer to the leadership of the nation's highest court in its interpretation of nearly identical constitutional language, rather than attempt to create a separate echelon of state constitutional interpretations to which we will advert whenever a majority of this court differ from a particular high court interpretation. The reason for the foregoing principle is that it promotes uniformity and harmony in an area of the law which peculiarly and uniquely requires them. The alternative required by the majority must inevitably lead to the growth of a shadow tier of dual constitutional interpretations state by state which, with temporal variances, will add complexity to an already complicated body of law.

The vagaries and uncertainties of constitutional interpretations, particularly in the Fourth and Fifth Amendment sectors

of our criminal law, are the hard facts of life with which the general public, the courts, and law enforcement officials must grapple daily. This condition necessarily breeds uncertainty, confusion, and doubt. It will not be eased or allayed by a proliferation of multiple judicial interpretations of nearly identical language.

I am not persuaded that the installation of the beeper in this case violated the defendant's Colorado constitutional rights and see no reason to depart from the analysis and holding in *United States v. Karo,* —— U.S. ——, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).

Accordingly, I respectfully dissent.