## No. 26717

### The People of the State of Colorado v. Linda Gail Becker
(533 P.2d 494)

Decided March 31, 1975.

Robert L. Russel, District Attorney, B. J. Fett, Jr., Deputy, for plaintiff-appellant.

Bertagnolli and Tegtmeier, Richard L. Tegtmeier, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

The district attorney of El Paso County appeals from a ruling of the trial court suppressing certain evidence seized in the defendant's apartment by virtue of a search warrant. The court's ruling is in error, and we reverse it.

Certain items of furniture had been stolen from the Carmel apartment complex in Colorado Springs. The maintenance supervisor of the Carmel apartments was informed by a former tenant that the defendant had items of the missing furniture in her ground floor apartment, which was not in the Carmel complex.

Accompanied by police officers, the maintenance supervisor went to the defendant's apartment. Although she was not home at the time, the maintenance supervisor was able to identify certain furniture through the window of her apartment as being some of the items taken from the Carmel apartments. Based on this observation, the police obtained a search warrant for the defendant's apartment. The items which are the subject of the court's suppression ruling were seized.

The issue involved is whether the actions of the maintenance supervisor, acting at the the request of the police officers, in looking through the window, violates the defendant's Fourth Amendment rights. For the reasons expressed below, we find that they do not.

The Fourth Amendment protects people, not places. But

what a person knowingly exposes to the public, even in his own home, is not protected. This is well expressed by Justice Harlan in his concurring opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) as follows:

"My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited."

The issue then is whether this defendant had a reasonable expectation of privacy as to those items which were observed through the window of her apartment. We answer this question in the negative.

The maintenance supervisor of the Carmel apartments viewed the items in the defendant's apartment from a common area in front of the apartment. The evidence indicates that the observation was made through the uncurtained part of a large picture window adjacent to the front door of the apartment. The area was contiguous to all of the apartments, and was not fenced in. Additionally, the maintenance supervisor had been given permission to enter this area by the apartment manager who had control of the area.

It is implicit from the trial court's findings that it was relying on the common-law concept of curtilage when it held that the sanctity of the defendant's premises could not be violated by looking through the window from the area outside the window. The trial court in effect found this area was part of the curtilage of the defendant's apartment. Courts have often looked to the common-law concept of curtilage to assist in the resolution of search and seizure issues. *See People v. McGahey*, 179 Colo. 401, 500 P.2d 977 (1972) and *Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285 (1972).

In *Blincoe*, it was held that the police officers were lawfully on the property, and that they were entitled to seize any

items which they saw in plain view. In *McGahey,* the court quoted the following language from *Blincoe:*

"The curtilage concept came from the court's desire to protect not only a citizen's house, but his grounds as well, from intrusions and an invasion of privacy."

The curtilage concept, properly understood, merely restates what the Supreme Court expressed in *Katz* as to a reasonable expectation of privacy. We hold that the defendant had no reasonable expectation of privacy as to the items which were viewed from this common area, which is not part of the curtilage of the defendant's apartment.

The failure to exhibit a reasonable expectation of privacy, as here, has been the subject of a substantial number of appellate decisions from other states. As an example, *see Commonwealth v. Hernley,* 216 Pa. Super. 177, 263 A.2d 904, 48 A.L.R.3d 1172 (1970) where a law enforcement agent used binoculars to look through a window. In *Hernley, supra,* it was stated that

"Our case presents the situation in which it was incumbent on the suspect to preserve his privacy from visual observation. To do that the appellees had only to curtain the windows. Absent such obvious action we cannot find that their expectation of privacy was justifiable or reasonable. The law will not shield criminal activity from visual observation when the actor shows such little regard for his privacy."

The ruling is reversed.