The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Robert Walter SAVAGE, Defendant-Appellee.

No. 81SA55.

Supreme Court of Colorado, En Banc.

July 20, 1981.

Charles G. Leidner, Dist. Atty., Thomas J. Jirak, Deputy Dist. Atty., Glenwood Springs, for plaintiff-appellant.

Webb Walker, III, Glenwood Springs, for defendant-appellee.

LOHR, Justice.

The prosecution brings this interlocutory appeal under C.A.R. 4.1 seeking review of an order of the district court which suppressed certain physical evidence on the basis that it was obtained by an unconstitutional [1] search and seizure. We reverse the trial court's ruling.

Robert W. Savage (defendant) and two others were charged by information with the crimes of second-degree burglary,[2] theft of property having a value of two hundred dollars or more but less than ten thousand dollars,[3] and theft of property having a value of fifty dollars or more but less than

1. *U.S. Const.* Amends. IV and XIV; *Colo. Const.* Art. II § 7.

2. Section 18–4–203, C.R.S. 1973 (1978 Repl. Vol. 8).

3. Section 18–4–401(2)(c), C.R.S. 1973 (1978

two hundred dollars,[4] all based on an incident that occurred on the evening of June 16, 1980.

The victim, Gene Hilton, returned to his house in rural Garfield County about 10:30 that evening to discover that it had been burglarized during his one-week absence. Approximately thirty minutes later Hilton saw a pickup truck pull into his driveway. Armed with a rifle, he approached the vehicle and asked the three occupants, including the defendant, what they were doing there. He received no satisfactory reply. During the course of the conversation he saw a magazine, which had been taken from his house, in the pickup. Suspicious that the three were the burglars, Hilton held them until the arrival of sheriff's officers about two hours later.

While the officers were investigating at the crime scene, a vehicle driven by 19-year-old Cherie LeVan arrived. An officer inquired why she was there, and, being unsatisfied with her response, placed her in a police vehicle and questioned her. She ultimately disclosed that the items taken in the burglary were located in a trailer that she shared with the defendant and two others. She was taken to the sheriff's office and gave a statement implicating the defendant in the burglary. She also authorized the officers verbally and in writing to search the trailer for the missing items. The search was conducted without a warrant, and fruits of the burglary were discovered in the livingroom of the trailer and were seized.

Prior to trial the defendant moved to suppress his own statements and the items seized from the trailer.[5] During the hearing on the motion the parties stipulated that the defendant and LeVan "had common possession and common authority" with respect to the trailer premises. Nevertheless, the trial court granted the motion to suppress the items seized, stating:

"The Court concludes from the facts that the Defendant has a possessory interest in and an expectation of privacy concerning the premises searched. Therefore, the consent to search by Ms. LeVan was ineffective as to the Defendant. The Defendant has standing to challenge the search.

⋅          ⋅          ⋅          ⋅          ⋅

IT IS FURTHER ORDERED that the Motion to Suppress items seized in the search of the Defendant's premises be and hereby is granted."

This interlocutory appeal was brought by the prosecution to review that ruling.

The prosecution contends that the defendant had no expectation of privacy in the trailer and that, even if he did, the search of the trailer was valid because it was accomplished with the consent of Le-Van, a co-occupant of the trailer. We conclude that the defendant had a legitimate expectation of privacy in the trailer, but that his co-occupant LeVan had the right to consent to the search in question.

I.

■ A person may challenge the constitutional validity of a search only if he has "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978). *Accord, Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *People v. Spies*, Colo., 615 P.2d 710 (1980); *see Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As the United States Supreme Court said in *Rakas v. Illinois, supra*:

"[T]he question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the

---

Repl. Vol. 8).

4. Section 18–4–401(2)(b), C.R.S. 1973 (1978 Repl. Vol. 8).

5. The motion to suppress the statements was denied. That ruling is not before us for review.

Fourth Amendment was designed to protect."

*Id.* at 140, 99 S.Ct. at 409, 58 L.Ed.2d at 399. Whether a Fourth Amendment interest exists is to be resolved by consideration of the totality of the circumstances with respect to the relationship between the person challenging the search and the area searched. *People v. Spies, supra; see Rawlings v. Kentucky, supra.*

■ The uncontroverted evidence in the instant case was that the defendant was one of four persons who lived in the trailer and shared rent equally. All the occupants used the living area in which the stolen goods were found. However, there was no evidence that persons other than the occupants had indiscriminate access to the trailer. *Cf. Rakas v. Illinois, supra,* 439 U.S. at 146, 99 S.Ct. at 432, 58 L.Ed.2d at 403 ("there comes a point when use of an area is shared with so many that one simply cannot reasonably expect seclusion"). Nor is this a case in which the items could be viewed through a window or other opening from a location outside the trailer. Compare this case with *People v. Becker,* 188 Colo. 160, 533 P.2d 494 (1975), upon which the prosecution relies. The trial court specifically found and concluded that the defendant had a legitimate expectation of privacy in the premises. That ruling is amply supported by the record and the case law. *See generally, e. g., United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *People v. Becker, supra; People v. Hannah,* 183 Colo. 9, 514 P.2d 320 (1973).

### II.

■ A search conducted without a warrant issued upon probable cause is unconstitutional, subject to only a few well-delineated exceptions. One such exception is a search conducted pursuant to consent freely and voluntarily given. *E. g., Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

In *United States v. Matlock, supra,* the United States Supreme Court had before it the same legal question which we must answer today:

"The question now before us is whether the evidence presented . . . with respect to the voluntary consent of a third party to search the living quarters of the respondent was legally sufficient to render the seized materials admissible in evidence at the respondent's criminal trial."

415 U.S. at 166, 94 S.Ct. at 990, 39 L.Ed.2d at 246.

In considering that question the court said:

". . . when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

*Id.* at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 250–51.

■ That quotation is followed immediately by the following footnote:

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*Id.* at 171, n.7, 94 S.Ct. at 993, 39 L.Ed.2d at 251. *See Schneckloth v. Bustamonte, supra; Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *People v. Hutto,* 181 Colo. 279, 509 P.2d 298 (1973); *Lanford v. People,* 176 Colo. 109, 489 P.2d 210 (1971); *Spencer v. People,* 163 Colo. 182, 429 P.2d 266 (1967). We disagree with the trial court's conclusion that LeVan could not legally consent to a search of the trailer that would adversely affect the defendant's legitimate expectation of privacy in the contents. Indeed, in his brief on appeal, the defendant concedes that LeVan, as a co-occupant of the trailer, could give a valid consent for the search in question.

### III.

Because the trial court concluded that LeVan could not validate the warrantless search of the trailer by her consent, the judge did not find it necessary to consider whether LeVan's consent was voluntarily given. A warrantless search is constitutionally justified by a consent to search only if that consent is voluntarily given. *Schneckloth v. Bustamonte, supra.* The burden of showing voluntariness is on the prosecution, and a determination whether the consent was voluntary must be made from the totality of the circumstances. *Id.; People v. Traubert,* Colo., 608 P.2d 342 (1980); *People v. Reyes,* 174 Colo. 377, 483 P.2d 1342 (1971). Both parties agree that, if we conclude that LeVan's consent could support the search, the matter should be returned to the trial court for a determination whether her consent was given freely and voluntarily. We agree that this is the appropriate disposition. In making this determination the trial court should apply the standards of *Schneckloth v. Bustamonte, supra. People v. Traubert, supra.*

We reverse the ruling of the trial court and remand this matter to that court for further proceedings in accordance with the views expressed in this opinion.