Larry HOFFMAN and Robin
Hoffman, Petitioners,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. 87SC453, 87SC463.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.
Rehearing Denied Oct. 23, 1989.

David F. Vela, State Public Defender,
Judy Fried, Deputy State Public Defenders,
Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B.
Howe, Chief Deputy Atty. Gen., Richard H.

Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., and Paul H. Chan, Asst. Atty. Gen., for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

The petitioners, Robin Hoffman and Larry Hoffman (Hoffmans), were convicted in separate trials in Morgan County District Court of cultivation of marijuana, in violation of section 18–18–106(8)(a)(I), 8B C.R.S. (1986). They appealed, and the Court of Appeals affirmed their convictions. Having granted certiorari to review issues relating to the trial court's order denying the Hoffmans' motion to suppress evidence, we reverse and remand with directions.[1]

I

On July 20, 1985, Robert Aufenkamp, then Chief of Police of Log Lane Village, received a telephone call from an anonymous citizen indicating that marijuana might be growing in the backyard of a residence located in that community. He and Lieutenant Dana Speaks of the Morgan County Sheriff's Department drove to the residence. Speaks knocked on the front door of the residence. Receiving no answer, he and Aufenkamp drove to the back of the residence and stopped in a service alley abutting the Hoffmans' backyard. From one vantage point they observed a garden through a wire mesh fence enclosing the backyard. Among the vegetables and flowers growing in the garden were what the officers believed to be marijuana plants. Speaks took photographs of the plants from the alley.

The two officers then opened an unlocked gate in the fence and entered the backyard. When Speaks received no response to his knock on the back door of the residence, he and Aufenkamp walked to the garden, took additional pictures of the plants, removed them and took them to an evidence room at the Morgan County sheriff's office. Subsequent testing confirmed that the plants were marijuana plants.

Prior to his trial, Larry Hoffman filed a motion to suppress introduction of the marijuana plants into evidence on the ground that in the absence of a warrant the officers' conduct was constitutionally impermissible. He and Robin Hoffman, who later joined in the motion, argued that while the off-premises sighting of the marijuana was lawful, the entry into the backyard and particularly the seizure of the plants violated their rights to privacy[2] in their residence and its curtilage.[3]

At the suppression hearing the People acknowledged the absence of any search warrant supporting the seizure of the plants[4] and presented testimony by the two police officers to justify the seizure.

---

1. This court's order granting certiorari framed the issues for review as follows:

    Whether officers, absent exigent circumstances, must secure a search warrant to enter the backyard of a residence so as to remove marijuana plants the officers lawfully had observed from a public alley abutting the backyard.

    Whether exigent circumstances justified the search in this case [and,] if not, whether the evidence either was admissible because of the officers' good faith mistake that there were exigent circumstances or was admissible under the doctrine of inevitable discovery.

    The two cases have been consolidated for purposes of our review, as they were by the Court of Appeals.

2. The Hoffmans cite both the fourth amendment to the United States Constitution and article II, section 7, of the Colorado Constitution as the bases for their right to be protected from unreasonable government intrusion.

3. Curtilage is a common-law concept which generally refers to the enclosed space of ground and buildings immediately surrounding a dwellinghouse. For search and seizure purposes, it includes:

    those outbuildings which are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment. *State v. Hanson,* 113 N.H. 689, 313 A.2d 730, 732 [1973].

    See *Black's Law Dictionary* 346 (5th ed. 1979). *See also United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *People v. McGahey,* 179 Colo. 401, 500 P.2d 977 (1972).

4. By this acknowledgment, the People implicitly conceded that the seizure of the marijuana plants required justification for purposes of constitutional analysis.

The People argued that because the back-yard and its contents were fully visible to the officers and anyone else from the public alley, the Hoffmans had no legitimate expectation of privacy in the garden area of their backyard and that in any event the officers were justified in entering the yard and seizing the plants.

The trial court denied the suppression motion. The trial court's order contained the following pertinent language:

I have difficulty in this case accepting the proposition that the defendant had any—or defendants had any expectation or reasonable expectation of privacy where the fence as I gather was transparent, that is to say, it was a wire fence, was a situation where you had a garden that was readily visible at least from an alley and, at least according to the evidence received, from a public highway.

It seems under those circumstances there is no expectation of privacy as to the items that can be observed. If there is no expectation of privacy, I frankly don't see that there is any violation, constitutional violation of such gravity that it requires the suppression of evidence in this case.

Robin Hoffman was convicted by a jury of the offense of cultivation of marijuana and sentenced to two years' probation. Larry Hoffman was convicted of the same offense following a trial to the court and was sentenced to three years' probation. On appeal, the Court of Appeals affirmed the judgments in a one-page opinion, stating:

[W]e conclude that the trial court rulings were correct for the reasons assigned by the People in the answer briefs. We

regard the following cases to be dispositive of the arguments and issues raised. *People v. Shorty,* 731 P.2d 679 (Colo. 1987); *People v. Gomez,* 632 P.2d 586 (Colo.1981); *People v. Ortega,* 175 Colo. 136, 485 P.2d 894 (1971).

*People v. Hoffman and Hoffman,* Nos. 86CA0647 and 86CA1198, slip op. at 1 (Colo.Ct.App. Sept. 17, 1987).

## II

### A

■ The fourth amendment to the United States Constitution and article II, section 7, of the Colorado Constitution protect persons from unreasonable searches and seizures.[5] *See Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Searches have been described as intrusive governmental investigations or explorations into non-public places for that which is concealed. *See* W. LaFave, *Search and Seizure* § 2.1(a), 301–03 (2d ed. 1987). However, the mere observation by government officials of that which is plainly visible to anyone does not constitute a search for constitutional purposes. *See California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Fagundes v. United States,* 340 F.2d 673 (1st Cir.1965); *People v. Becker,* 188 Colo. 160, 533 P.2d 494 (1975). Seizures, on the other hand, refer to some meaningful interference with an individual's possessory interest in personal property such as the physical taking and removing of such property. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); W. La-

---

5. The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Article II, section 7, of the Colorado Constitution provides:

**Security of person and property—searches —seizures—warrants.** The people shall be secure in their persons, papers, homes and effects; from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

Fave, *Search and Seizure* § 2.1(a), 299–301 (2d ed. 1987).

■ The touchstone of fourth amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy" in the area or item searched or seized. *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). *See Ciraolo,* 476 U.S. at 211, 106 S.Ct. at 1811; *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984). That determination requires the court to ascertain whether an individual has exhibited a subjective expectation of privacy in the particular place or object in question and whether that subjective expectation is one society recognizes as reasonable. *Katz,* 389 U.S. at 361, 88 S.Ct. at 516. The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in each particular case. *Oliver,* 466 U.S. at 177–78, 104 S.Ct. at 1740–41; *People v. Shorty,* 731 P.2d 679, 681 (Colo.1987); *People v. Oates,* 698 P.2d 811, 819 (Colo.1985); *People v. Savage,* 630 P.2d 1070, 1073 (Colo. 1981).

■ In the present case, the Hoffmans and the People agree that the officers' off-site observation of the marijuana plants did not constitute a search for fourth amendment purposes. There is no invasion of privacy in the observation of that which is plainly visible to the public. *See Fagundes,* 340 F.2d 673 (1st Cir.1965); *Petteway v. United States,* 261 F.2d 53 (4th Cir.1958). As the Supreme Court has recognized, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz,* 389 U.S. at 351, 88 S.Ct. at 511. Thus, in general, a curtilage is not protected from observations that are lawfully made from outside its perimeter not involving physical intrusion. *Florida v. Riley,* —— U.S. ——, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989); *Ciraolo,* 476 U.S. at 213, 106 S.Ct. at 1812.

**B**

■ The fact that the officers legitimately obtained sufficient information to establish probable cause to believe the Hoffmans had committed an offense does not end the inquiry. Probable cause permits officers to obtain a warrant to search premises and to seize property. *See Specht v. Jensen,* 832 F.2d 1516 (10th Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989); *U.S. v. Burns,* 624 F.2d 95 (10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *People v. Rayford,* 725 P.2d 1142 (Colo.1986); *People v. Hill,* 690 P.2d 856 (Colo.1984). The officers here elected to enter the backyard, walk to the garden [6] and seize the marijuana plants, all without first obtaining a warrant judicially authorizing such conduct.

■ Warrantless searches and seizures are presumptively invalid under the fourth amendment to the United States Constitution and article II, section 7, of the Colorado Constitution, subject only to a few specifically delineated exceptions. *See Thompson v. Louisiana,* 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (per curiam); *United States v. United States Dist. Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *People v. Dandrea,* 736 P.2d 1211 (Colo.1987); *People v. Reynolds,* 672 P.2d 529 (Colo.1983); *People v. Stoppel,* 637 P.2d 384 (Colo.1981). The prosecution bears the burden of establishing that warrantless conduct by government officials falls within one of those exceptions. *See Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Jansen,* 713 P.2d 907 (Colo.1986); *People v. Turner,* 660 P.2d 1284 (Colo.1983); *People v. Williams,* 200 Colo. 187, 613 P.2d 879 (1980).

While the fourth amendment protects people rather than places, *Katz,* 389 U.S. at 353, 88 S.Ct. at 512, particular places retain significance for purposes of determining

---

**6.** The record suggests that in entering the backyard the officers in fact conducted a search to verify their suspicions that the plants were marijuana plants.

the scope of fourth amendment protections. Certain areas, such as the interiors of homes and offices, are deemed to be constitutionally protected areas. *See Mincey,* 437 U.S. at 391, 98 S.Ct. at 2413; *People v. Turner,* 660 P.2d 1284, 1287 (Colo.1983). The United States Supreme Court recognized this distinction in *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971), in the following language:

> [P]lain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*See also Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

One area traditionally recognized as deserving of special protection from unwarranted government intrusion is the area immediately surrounding a private residence, or the curtilage. As the United States Supreme Court stated in *Dow Chemical Co. v. United States,* 476 U.S. 227, 235, 106 S.Ct. 1819, 1825, 90 L.Ed.2d 226 (1986), "[t]he curtilage area immediately surrounding a private house has long been given protection as a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept." Courts have recognized that this area is entitled to the same level of protection as is a residential dwelling because it harbors the "intimate activity associated with the 'sanctity of a [person's] home and the privacies of life.' " *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). The Supreme Court has identified four factors to consider in defining the extent of a home's curtilage: "the proximity of the area claimed to be curtilage to the home, wheth-

er the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). Although we stated in *People v. Becker,* 188 Colo. 160, 163, 533 P.2d 494, 496 (1975), that "[t]he curtilage concept, properly understood, merely restates what the Supreme Court expressed in *Katz* as to a reasonable expectation of privacy," the concept of curtilage continues to play an independent role in fourth amendment analysis. *See Dunn,* 480 U.S. at 300, 107 S.Ct. at 1139; *Ciraolo,* 476 U.S. at 212–13, 106 S.Ct. at 1812–13; *Oliver,* 466 U.S. at 180, 104 S.Ct. at 1742.

The initial question raised by the Hoffmans' motion is whether the marijuana plants were located outside the curtilage of their house. If so, the Hoffmans in all probability could not establish either prong of the *Katz* test and, therefore, could assert no constitutionally protected privacy interest. Moreover, if the plants were located within the curtilage, but the curtilage was determined to have been generally accessible by as well as visible to the general public, a *Katz* analysis might reveal that the Hoffmans either had no subjective expectation of privacy in the curtilage or, if so, that their subjective expectation of privacy is not one acceptable to society. *See Ciraolo,* 476 U.S. at 213, 106 S.Ct. at 1812; *United States v. Smith,* 783 F.2d 648, 651 (6th Cir.1986); *United States v. Magana,* 512 F.2d 1169, 1170 (9th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975); *Shorty,* 731 P.2d at 681.

The trial court erroneously assumed that the fact that the plants were visible from one point in the alley foreclosed any assertion of reasonable expectations of privacy by the Hoffmans. Its order does not contain findings as to whether the plants were located in the curtilage and, if so, whether under all relevant circumstances the Hoffmans had no reasonable expectations of privacy in their garden. *See State v. Rickard,* 420 So.2d 303 (Fla.1982); *State v.*

*Rowe,* 422 So.2d 75 (Fla.Dist.Ct.App.1982); *State v. Hook,* 60 Haw. 197, 587 P.2d 1224 (1978); *People v. Pakula,* 89 Ill.App.3d 789, 44 Ill.Dec. 919, 411 N.E.2d 1385 (1980); *State v. Silva,* 509 A.2d 659 (Me.1986); *State v. Prier,* 725 S.W.2d 667 (Tenn.1987). *But see People v. Schmidt,* 168 Ill.App.3d 873, 119 Ill.Dec. 458, 522 N.E.2d 1317 (1988); *State v. Loomis,* 436 So.2d 1103 (Fla.Dist.Ct.App.1983); *State v. McConnell,* 422 So.2d 74 (Fla.Dist.Ct.App.1982); *Lightfoot v. State,* 356 So.2d 331 (Fla.Dist. Ct.App.), *cert. denied,* 361 So.2d 833 (Fla. 1978). The case must be remanded to the trial court for the entry of appropriate factual findings and the application of these principles. *See* Crim.P. 41(e).

## C

The Court of Appeals cited three decisions of this court in affirming the trial court's ruling. However, in each of those cases special circumstances supported the conduct of police officials. In *People v. Shorty,* 731 P.2d 679 (Colo.1987), we held that the defendant had no reasonable expectation of privacy in a common landing located outside the front door to his apartment which was accessible to anyone. We therefore found no fourth amendment violation when police officers lifted a piece of carpet located on the landing and seized a packet of cocaine hidden thereunder. In *People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), we concluded that a warrantless entry and seizure of contraband was permissible under the doctrine of exigent circumstances because the defendants knew police officers were present and quick action was required to preserve evidence in a motel room observed through a window.

Finally, in *People v. Ortega,* 175 Colo. 136, 485 P.2d 894 (1971), police officers received information that the defendant was hiding narcotics in his backyard and set up a surveillance. The officers watched the defendant walk to a weeded area in his backyard, bend in a crouching position for a few seconds and then start to return to his residence. When the officers called out to him, he threw an object into the grass. The officers then arrested him, seized the packet he had discarded, and also seized LSD and marijuana from the weeded area he had just visited. We found no constitutional violation in this warrantless seizure of drugs from the defendant's backyard, holding that the packet had been abandoned by the defendant and the LSD and marijuana were seized incident to an arrest based upon probable cause. We also concluded that the officers' observations of defendant's conduct did not violate any fourth amendment privacy interest.

In each of these cases the defendant was present on the property and became aware that police officers were also present in a situation in which the officers' need to act quickly was amply demonstrated. Those circumstances are not present in this case. We therefore do not view those decisions as dispositive of the issues raised here.

## III

In view of the foregoing discussion, it is clear that the trial court failed to make sufficient findings and apply the appropriate test to the Hoffmans' fourth amendment argument. However, the People argue that the entry and the seizure here was justified under the doctrine of exigent circumstances. *See People v. Turner,* 660 P.2d 1284, 1287–88 (Colo.1983); *People v. Hogan,* 649 P.2d 326, 331 (Colo.1982); *McCall v. People,* 623 P.2d 397, 402 (Colo. 1981). The People also argue that the Hoffmans' convictions should be affirmed pursuant to the doctrine of inevitable discovery. *See, e.g., Murray v. United States,* —— U.S. ——, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *People v. Schoondermark,* 759 P.2d 715 (Colo.1988). Finally, the People contend that even if the trial court erred in admitting the marijuana plants into evidence, such constitutional error was harmless beyond a reasonable doubt.[7] *See Kot-*

---

**7.** In their brief the People contend that the evidence in this case establishes a good faith excep-

*teakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946); *Crespin v. People*, 721 P.2d 688, 691 (Colo. 1986); *Graham v. People*, 705 P.2d 505, 509 (Colo.1985); *People v. Quintana*, 665 P.2d 605, 612 (Colo.1983).

The trial court did not consider the issues of exigent circumstances and inevitable discovery. It should be permitted to do so in the event it alters its initial decision on the Hoffmans' motion, particularly in view of the fact that additional factual findings might be required to resolve those issues. The issue of harmless error was not included among the issues accepted for certiorari review, and we elect not to address it.

## IV

For the foregoing reasons, the judgment of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with directions to remand to the trial court for the conduct of such further proceedings as the trial court may deem appropriate, to permit reconsideration of the Hoffmans' motion to suppress evidence, pursuant to the appropriate standards set forth in this opinion. In the event the trial court concludes that the suppression motion should be denied, the judgments of conviction will remain and the Hoffmans may appeal such ruling to the Court of Appeals. In the event the trial court grants the motion and therefore orders new trials for the Hoffmans, the People may appeal such ruling pursuant to C.A.R. 4.1.

ERICKSON, J., dissents.

VOLLACK, J., dissents, and ROVIRA, J., joins in the dissent.

ERICKSON, Justice dissenting:

I respectfully dissent. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), declared that the fourth amendment protects persons and not places. Property law concepts, which preceded *Katz*, were to a large extent cast aside for the newly created right of priva-

cy. Although curtilage concepts and inevitable discovery followed *Katz*, the primary issue in this case is whether the Hoffmans had a reasonable expectation of privacy in a backyard marijuana garden that was separated from an alley by a wire fence. The trial judge concluded that the Hoffmans could not have had a reasonable expectation of privacy in their backyard garden in a residential area in Morgan County. The growing marijuana was in "open view" and visible from the alley. The police officers required nothing more than the naked eye to determine that marijuana was growing. *See United States v. Fisch*, 474 F.2d 1071 (9th Cir.), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973). The Hoffmans' wire mesh fence did not prevent observation of their growing marijuana.

The Supreme Court of Florida, in analyzing a similar factual issue, distinguished "plain view" as espoused by the plurality in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), from "open view." *State v. Rickard*, 420 So.2d 303, 305–06 (Fla.1982). In *Rickard*, relied on by the majority, the court held that marijuana plants in a backyard were in "plain view," and that the police did not violate the fourth amendment by observing the plants without a search warrant. However, because the defendant had taken steps to conceal the marijuana from public view, by putting it behind a shed and erecting a partition to shield it, he had exhibited an expectation of privacy that society was willing to find reasonable. 420 So.2d at 306. Therefore, under *Katz*, the marijuana was located in an area protected by the fourth amendment, and a warrant was required to seize it. *Id.*

However, *Rickard* distinguished another Florida case, *Lightfoot v. State*, 356 So.2d 331 (Fla.Dist.Ct.App.1978), in which no warrant was required to seize marijuana in a backyard. The *Rickard* court emphasized that in *Lightfoot*, as contrasted with *Rickard*, there was no expectation of privacy and that seizure of the marijuana with-

tion to the exclusionary rule pursuant to § 16–3–308, 8A C.R.S. (1986). The People abandoned that contention during oral argument.

out a warrant was proper because the marijuana was in "open view." In *Lightfoot,* the court stated:

The defendant claims a violation of his Fourth Amendment rights, contending that absent exigent circumstances the police could not seize the plants without a warrant. In determining whether the marijuana plants were subject to Fourth Amendment protection we think the appropriate test is whether the defendant had a reasonable expectation of privacy, and, if so, whether that expectation was violated by an unreasonable governmental intrusion. Applying that test to the facts of this case we conclude that a person who keeps marijuana plants in open view in his backyard in plain view of a neighbor has no reasonable expectation of privacy and that seizure of the plants without a warrant by a police officer who has seen the plants from the neighbor's yard, where he has a legal right to be, is not an unreasonable governmental intrusion.

*Lightfoot,* 356 So.2d at 333.

The facts in the present case are closer to *Lightfoot.* The Hoffmans took no steps to conceal the marijuana from public view, and no evidence supports the claim that the Hoffmans had a reasonable expectation of privacy in the area of the backyard where the marijuana was grown. Thus, the district court and the court of appeals correctly decided that, without a reasonable expectation of privacy, no fourth amendment concerns were implicated by a warrantless seizure of the marijuana.

Accordingly, I dissent, and would affirm the court of appeals.

VOLLACK, Justice dissenting:

The majority concludes that remand is necessary to determine whether the Hoffmans enjoyed a subjectively and objectively reasonable expectation of privacy in their backyard. *See* majority at 475–76. I dissent because I believe under the facts of this case that no such expectation of privacy is reasonable as a matter of law. I also dissent because I believe that any error in failing to suppress the marijuana was harmless beyond a reasonable doubt.

I.

A.

I agree with the majority in part II.C. that the three cases cited by the court of appeals are not dispositive of whether the Hoffmans enjoyed a reasonable expectation of privacy in their backyard. The three cases are factually distinguishable. *See People v. Shorty,* 731 P.2d 679, 682 (Colo. 1987) (warrantless seizure of drugs beneath welcome mat in front of apartment does not violate fourth amendment because defendant had no legitimate expectation of privacy in common area in front of his apartment at bottom of public stairwell not secured in any manner); *People v. Gomez,* 632 P.2d 586, 592 (Colo.1981) (warrantless seizure of drugs observed from public area through motel window does not violate fourth amendment because of exigent circumstance that defendant's companion saw police observing the drugs and the defendant would certainly have moved or destroyed the drugs before a warrant could be secured), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *People v. Ortega,* 175 Colo. 136, 139, 485 P.2d 894, 896 (1971) (warrantless seizure of drugs located in weedy area of backyard of apartment building does not violate fourth amendment because defendant had no reasonable expectation of privacy where police, acting on an informant's tip that defendant was hiding drugs in weedy area, saw defendant go to weedy area and crouch over it for a few seconds and where police saw defendant throw away object in his hand immediately after police called his name). Whether a defendant enjoys a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case. *Oliver v. United States,* 466 U.S. 170, 177–78, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984); *Shorty,* 731 P.2d at 681; *People v. Oates,* 698 P.2d 811, 819 (Colo.1985).

### B.

I also agree with the majority that this case presents a curtilage question. At 475. Whether a particular area qualifies as curtilage for fourth-amendment analysis depends on four factors. These factors include:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987) (citations and footnote omitted). If remand were necessary in this case, then the *Dunn* test is the appropriate test to apply.

Even if the backyard in this case is properly characterized as curtilage under *Dunn*, however, suppression is not required where the defendant has no reasonable expectation of privacy. *Shorty*, 731 P.2d at 681 ("the fact that a search occurs within the curtilage is not dispositive if the area's public accessibility dispels any reasonable expectation of privacy"); *cf. People v. Becker*, 188 Colo. 160, 163, 533 P.2d 494, 496 (1975) ("The curtilage concept, properly understood, merely restates what the Supreme Court expressed in *Katz* as to a reasonable expectation of privacy.").

Whether a person has a constitutionally protected reasonable expectation of privacy requires "a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986); *see also California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988) (no reasonable expectation of privacy in contents of garbage bags left on curb outside home); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Shorty*, 731 P.2d at 681; *Oates*, 698 P.2d at 819.

The majority reads the suppression ruling as considering solely the visibility of the marijuana but not the other relevant circumstances that the backyard was fenced and that the contraband was located in a garden containing other plants. At 475. I read the suppression ruling as concluding that the height of the marijuana plants over the top of the fence and the transparency of the wire fence that failed to obscure the smaller plants so negates a reasonable expectation of privacy as to compel the conclusion that suppression is not required even if the plants were located within the curtilage of the house. The order stated:

> I have difficulty in this case accepting the proposition that the ... defendants had any expectation or reasonable expectation of privacy where the fence as I gather was transparent, that is to say, it was a wire fence, was a situation where you had a garden that was readily visible at least from an alley and, at least according to the evidence received, from a public highway.
>
> It seems under those circumstances there is no expectation of privacy as to the items that can be observed. If there is no expectation of privacy, I frankly don't see that there is any violation, constitutional violation of such gravity that it requires the suppression of evidence in this case.

Whether a particular area adjoining the home is entitled to fourth-amendment protection from police seizure depends on the facts of each case. *Ciraolo*, 476 U.S. at 213, 106 S.Ct. at 1812. Certain facts, however, can figure so prominently in fourth amendment analysis that a trial court could conclude as a matter of law that the defendant could not hold a reasonable expectation of privacy. The size of the plants in relation to the fence and the unobscuring quality of the wire fence in this case are two such factors. *See, e.g., People v. Schmidt*, 168 Ill.App.3d 873, 880, 119 Ill. Dec. 458, 463, 522 N.E.2d 1317, 1322 (1988) (no reasonable expectation of privacy in marijuana patch in unfenced but partially hedged backyard where no steps were taken to shield the six-foot-tall plants from the

view of passersby or to limit public access to the garden); *Diehl v. State,* 461 So.2d 157, 158 (Fla.Dist.Ct.App.1984) (no reasonable expectation of privacy in six-foot-tall marijuana plants visible both from above in aerial exploratory search and from public road); *Lightfoot v. State,* 356 So.2d 331, 334 (Fla.Dist.Ct.App.1978) (no reasonable expectation of privacy in marijuana plants in pots in chain-link fenced backyard where plants were in open view to public).

I would affirm the trial court's refusal to suppress the marijuana because the Hoffmans did not have a reasonable expectation of privacy in the garden under the facts of this case.[1]

## II.

Larry and Robin Hoffman were convicted in separate trials of violating section 18–18–106(8)(a)(I) by knowingly cultivating marijuana on land they occupied. The evidence that may be suppressed on remand has relevance only in deciding whether the plants growing in the Hoffman's garden were marijuana plants. Because I believe the evidence is overwhelming that the plants in the Hoffmans' garden were identified as marijuana plants, any error in failing to suppress the marijuana was harmless beyond a reasonable doubt.

A trial error of constitutional dimension does not require reversal if the error was harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Key v. People,* 715 P.2d 319, 323 (Colo. 1986); *People v. Hickox,* 751 P.2d 645, 647 (Colo.App.1987). A harmless error is any error which does not substantially affect the fairness of the proceedings. *People v. Snook,* 745 P.2d 647, 649 (Colo.1987); Crim P. 52(a). As long as the error did not contribute to the verdict, the error is harm-

less. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Crespin v. People,* 721 P.2d 688, 691 (Colo. 1986).

The evidence produced at the suppression hearing and certified to this court by both Hoffmans offers overwhelming proof that the plants cultivated in the Hoffmans' garden were marijuana plants. Robert Aufenkamp, the Log Lane Village Chief of Police, responded to an anonymous tip that marijuana was growing in the backyard garden at 109 Pine Street, which is the Hoffmans' address. He asked Lieutenant Dana Speaks of the Morgan County sheriff's office to accompany him because Speaks is an expert in identifying drugs and had taught classes on the subject to other police officers.

It was a sunny, late afternoon when the officers arrived at 109 Pine Street. After knocking on the front door but receiving no response, the officers drove through the alley behind the house. From the car they saw marijuana plants growing in the garden. The marijuana plants were from twenty inches to about six feet in height. When they got out of the car, the officers were standing ten to twelve feet from the garden. · They could see the plants clearly because many of the marijuana plants were taller than the fence and because the fence was made of wire. The fence was three to four feet tall. Officer Speaks identified the plants as marijuana plants. He took photographs of them from the alley.

It strains credulity to suggest that this evidence was not harmless beyond a reasonable doubt. Officer Speaks stated that the marijuana plants were "readily visible from Highway 144, which was 85–90 yards away." His identification of the plants is corroborated by Chief Aufenkamp and the

---

**1.** I also disagree with the conclusion of the majority that remand is necessary to determine whether exigent circumstances were present to justify a warrantless seizure of the marijuana plants. At 478. The trial court impliedly found at the conclusion of the suppression hearing that no exigent circumstances were present when it stated: "If it will simplify the argument very much, I am not impressed with arguments of exigency," and when it stated: "I am looking

at it as a reasonable expectation of privacy case" in response to defense attorney remarks that "I believe you said you weren't impressed with any exigent situation in this case." Findings of the trial court may be express or implied from a fair reading of the record. *See Atchison, T. & S.F. Ry. v. Public Util. Comm'n,* 763 P.2d 1037, 1041 (Colo.1988); *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 150 (Colo.1988).

photographs taken from the alley. I believe that the identification of six-foot-tall marijuana plants seen from ten to twelve feet away on a sunny afternoon by two officers, one of whom was an expert in drug identification, is enough to conclude beyond a reasonable doubt that the plants growing in the Hoffmans' backyard were marijuana plants. The police, like the public, are free to inspect a backyard garden from the street if their view is unobstructed. *Florida v. Riley,* —— U.S. ——, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989). Any error in admitting the marijuana could not contribute to the verdict of either Hoffman because of the overwhelming evidence that marijuana plants were growing in the Hoffmans' garden. *See People v. Myrick,* 638 P.2d 34, 38 (Colo.1981) (even if trial court committed constitutional error in failing to suppress stolen televisions to show defendant committed theft by receiving, any error was harmless because defendant's commission of the crime was overwhelmingly established by conversation of detectives with defendant and photographs of the defendant at the site of the transfer of stolen merchandise); *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019–20 (1979) (although trial court erred in admitting handwriting samples to prove defendant was kidnapper/robber because samples were not proved to be genuine, error was harmless because his identity was overwhelmingly established by lineup identification and personal observation of kidnapping); *see also People v. Schmidt,* 168 Ill.App.3d 873, 880, 119 Ill.Dec. 458, 463, 522 N.E.2d 1317, 1322 (1988) (warrantless seizure of marijuana plants in unfenced backyard partially obscured by hedge does not require reversal under plain error analysis because the plants were visible over the top of the hedge).

I would affirm both convictions.

I am authorized to say that Justice ROVIRA joins in this dissent.