The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**Connie J. WIMER,**
Defendant–Appellant.

No. 88CA1917.

Colorado Court of Appeals,
Div. V.

June 28, 1990.

Rehearing Denied July 26, 1990.

Certiorari Granted Nov. 13, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Franco Domenico & Associates, Kathleen Franco Domenico, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Connie J. Wimer, appeals the judgment of conviction entered on a jury verdict finding her guilty of cultivation of marijuana. She contends the trial court erred in denying her pre-trial motion to suppress evidence obtained as the result of an allegedly illegal search, and argues the court erred in excluding certain evidence. We affirm.

## I.

The evidence at the suppression hearing established that the Aurora police were contacted by an anonymous phone caller who claimed that defendant was growing marijuana in her backyard. The caller stated that he lived on the fourth floor of an apartment near defendant's house and could see the plants from that location. The caller also told the officers that there were cracks in the fence, and that one could look through the cracks in the fence and see the marijuana growing.

Two officers drove to defendant's house and parked their car in the alley running directly behind the house. They discovered that the house and yard were enclosed by a six-foot privacy fence built on weed-ridden and unkempt land approximately two feet back from the alley. The officers stepped onto the unimproved property between the alley and the fence, peered through the fence at locations where there were spaces between the wooden boards, and saw plants resembling marijuana growing in the backyard.

A search warrant was subsequently obtained, the plants were seized, and tests established that they were marijuana.

In her motion to suppress evidence, defendant maintained that, in peering through the six-foot privacy fence located on the curtilage surrounding her house, the officers violated her Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. The court rejected this argument, concluding that although the fence was evidence of some expectation of privacy, an expectation of total privacy was unreasonable given the circumstances in this case. Defendant now challenges that ruling. We find no error.

■ The Fourth Amendment does not protect a defendant from police intrusions that do not abridge a legitimate expectation of privacy. *People v. Shorty*, 731 P.2d 679 (Colo.1987). Hence, in order to establish a Fourth Amendment violation, the defendant must show to the court's satisfaction that she has exhibited a subjective expectation of privacy in the particular place or object in question. In addition, the court must also determine whether that subjective expectation is one that society would recognize as reasonable. *Hoffman v. People*, 780 P.2d 471 (Colo.1989); *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989); *Katz v. United States*,

389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case. *People v. Shorty, supra.*

One area traditionally recognized as deserving of protection from unwarranted government intrusion is the curtilage surrounding a private residence. *Hoffman v. People, supra.* However, although the curtilage surrounding one's home may, in some cases, be entitled to the same level of protection as a residence, the fact that a search occurs within the curtilage is not dispositive if the area's public accessibility dispels any reasonable expectation of privacy. *People v. Shorty, supra.* Therefore, there is no invasion of privacy in the observation of that which is plainly visible to the naked eye from an area which is routinely accessible to the public. *See California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

We agree with the trial court that, in erecting the fence, defendant manifested her subjective intent to maintain privacy in her backyard. However, as the court also concluded, given the circumstances at issue, defendant's expectation of privacy is not one that society would consider reasonable. The record reveals that there are several multi-level buildings in the vicinity of defendant's home and that the marijuana could be seen from a nearby fourth floor apartment. Therefore, despite the fence, all activities in the yard were not shielded from all eyes or all vantage points. *See California v. Ciraolo, supra.* (Court noted that a ten-foot fence would not prevent a citizen or a policeman from observing marijuana plants in a yard from the top of a truck or a two-level bus: "Whether respondent therefore manifested a subjective expectation of privacy from *all* observations of his backyard, or whether he manifested merely a hope that no one would observe his unlawful gardening pursuits, is not entirely clear....").

Furthermore, defendant's yard is adjacent to a public alley in an urban area. As the trial court noted, it is questionable whether defendant could have expected total privacy from curious passersby in the public alley, particularly given the visible spaces in between the boards of the fence. Defendant simply did not take those precautions necessary, such as filling in the spaces between the fence boards, to foreclose the possibility that persons at street level would be able to detect objects or activity in her yard.

Moreover, with record support, the trial court found that: "Defendant had not posted any signs marking her property line and did not tend the property. The police would have no way to know that the land was private." Therefore, notwithstanding defendant's testimony that people did not walk on the unimproved portion of her property, the trial court was correct in concluding that the police officers were justified in stepping where they did.

We are unpersuaded by defendant's contention that, irrespective of the validity of the trial court's findings, its conclusion was in error because the officers trespassed on the curtilage and touched the fence. Relevant factors in determining whether a certain area is protected as curtilage include: 1) the proximity between the area claimed to be curtilage and the home; 2) the nature of the uses to which the area is put; 3) the steps taken to protect the area from observation; and 4) whether the area is included within an enclosure surrounding the home. *Hoffman v. People, supra.*

As defendant concedes, the two-foot strip of property on which the officers stepped was unimproved and weed-ridden. Given the condition of the property and its proximity to the alley, it is evident that the unimproved property was not part of the curtilage and not protected as such under the Fourth Amendment.

Furthermore, even if the officers' activities in stepping onto the two-foot strip of non-curtilage property constituted a trespass, this factor is not dispositive. A trespass is not the equivalent of a search within the meaning of the Fourth Amendment. The presence or absence of a physical trespass by police has "little or no rele-

vance" to the question of whether society would recognize an asserted privacy interest as reasonable. *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

Finally, it did not matter that the officer had to "touch" the fence to look into the backyard. *James v. United States,* 418 F.2d 1150 (D.C.Cir.1969) ("That the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any curious passerby.").

Given the totality of the circumstances here, we agree with the trial court that the observations by the police officers did not constitute a search under the Fourth Amendment. Accordingly, denial of the motion to suppress was proper.

## II.

■ Defendant also contends the court erred in excluding the testimony of a plant taxonomist with respect to the species of cannabis seized from her yard. We disagree.

Section 12–22–303(17), C.R.S. (1985 Repl. Vol. 5) defines marijuana as all parts of the plant *cannabis sativa L.* Defendant's expert witness was prepared to testify that the cannabis plants seized from defendant's yard did not fall within the statutory definition of marijuana, but rather were *cannabis indicia.* The court disallowed the testimony, concluding that, as a matter of law, the statute includes all varieties of cannabis, including *cannabis indicia.*

Our supreme court has determined that *cannabis sativa* is the sole species of which *cannabis indicia* is merely a variety, and hence, the statutory definition of marijuana includes all variants of the species cannabis, including *cannabis indicia. People v. Holcomb,* 187 Colo. 371, 532 P.2d 45 (1975); *see also People v. Denn,* 192 Colo. 276, 557 P.2d 1200 (1976).

The *Holcomb* ruling is dispositive here. Even under the proffered testimony of defendant's expert, the cannabis found in defendant's yard would be of the type cover-

ed by the statute, and therefore, there was no error in the court's exclusion of the evidence.

Judgment affirmed.

CRISWELL, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

Defendant owned a house with a backyard. The part of her backyard with the marijuana plants was enclosed with a six-foot high privacy fence. Defendant testified and the trial court determined that her purpose, or subjective expectation, in constructing the fence was to create an area of privacy. The police officers who observed the marijuana testified that, in order to see the plant, they left the nearby alley and crossed over a two-foot area of weeds and grass that were flush against the fence. The officers testified that they observed the marijuana by looking through the openings and cracks in the fence. Defendant's unrefuted testimony established that the approximate two-foot weeded area between the fence and alley was not traversed by the public.

The criteria to be used in determining whether a person has a constitutionally protected expectation of privacy is: Did the individual exhibit a subjective expectation of privacy in regard to the object of the challenged search and is society willing to recognize that expectation as reasonable? *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

According to both her testimony and the findings of the trial court, here, defendant met the first *Katz* requirement. The subjective expectation of privacy that is recognized as to one's home, *see United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), extends to the curtilage, which is that area surrounding the home that is associated with the intimate activities and privacies of life. *See Boyd v. United States,* 116 U.S. 616, 29 L.Ed. 746 (1886). A fenced area of a backyard, such as this one, is part of the curtilage of the

home. *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

Accordingly, the dispositive question here concerns the second part of the *Katz* test. That is, is society willing to recognize defendant's expectation of privacy for her backyard as reasonable. And, that question in turn hinges on the extent to which the police officers had to go in order to observe the plants.

As a general proposition, police may see what may be seen from a public vantage point where they have a right to be. *Florida v. Riley,* 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Thus, if the observations of the police officers had occurred from the alley, I would agree there would not be a legitimate expectation of privacy by defendant.

Here, however, the critical observations were not made from a public place. Rather, the officers were able to see the marijuana plants only by leaving the alley and crossing approximately two-feet onto defendant's unimproved property and only then after looking through the cracks in the fence. The evidence showed that the two-foot weeded area was not used by the public. In my view, by these actions, the officers trespassed not only on the defendant's property, but also on her rights under the Fourth Amendment.

In *People v. Lovelace,* 116 Cal.App.3d 541, 172 Cal.Rptr. 65 (1981), a case very similar to this one, the court suppressed evidence where police officers who, while acting on a tip, observed marijuana plants in defendant's backyard through knotholes and cracks in a fence surrounding the backyard. Because the police officers' vantage point was from a place not expected to be used by the public, the court found an unreasonable search under the Fourth Amendment. *See also People v. Fly,* 34 Cal.App.3d 665, 110 Cal.Rptr. 158 (1973) (observations from non-public vantage point made by use of telescope); *State v. Boynton,* 58 Haw. 530, 574 P.2d 1330 (1978) (greater than six-foot high wood fence climbed by officers).

In accordance with these cases I would hold that when, as here, a person has sur-rounded his property with a privacy fence in excess of six feet high, that person has a justified expectation of privacy that should be recognized by society even if the police can locate a small crack or knothole to look through. 1 W. LaFave, *Search & Seizures* § 2.3(g) (2d ed. 1987).

I find several cases relied on by the majority to be inapplicable to this situation. For example, in *Florida v. Riley, supra,* that court concluded that the observations of the police did not constitute a search in violation of the Fourth Amendment because the defendant had no legitimate expectation of privacy from an aerial vantage point viewing. Neither that holding nor *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) contain any indication that merely because a public aerial vantage viewing point does not violate the Fourth Amendment, defendant, *ipso facto,* has lost his expectation of privacy from other non-public vantage points.

The thrust of both these opinions is to the contrary. In those cases, the defendant's Fourth Amendment rights were not violated only because the observation place was public. Thus, here the alleged viewing of the plants from an apartment by an unidentified informant did not cost this defendant his expectation of privacy from other places.

Furthermore, this line of reasoning is rejected in *Hoffman v. People,* 780 P.2d 471 (Colo.1989) in which the court held that even if marijuana could be seen from one vantage point in an alley, it did not affect defendant's right to expect privacy from other places. The determination of a legitimate expectation of privacy depends on the facts and circumstances of each case. *Hoffman v. People, supra.*

In my view, the evidence in this record fails to support the majority's implicit conclusion that this two-foot wide strip along the fence was routinely used by curious bypassers to look at marijuana plants through cracks in the fence. Defendant testified that the strip was not used or traversed by the public, and there was no contrary testimony from the People's witnesses.

The majority opinion creates a path by which police are now constitutionally permitted to trespass on a homeowner's property, touch a privacy fence, and then look through any openings therein, for evidence of criminal activity. This ruling severely undermines the idea that the curtilage is entitled to a reasonable expectation of privacy and creates a basis for the police to cross into an unfenced backyard to look inside garages and other storage areas. *See Dow Chemical Co. v. United States,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986).

Furthermore, if the right to privacy in a curtilage area is equivalent to the privacy of a house, the extension of the rule announced here would allow the police, without constitutional restrictions, to enter onto a person's property in order to look into that person's home. I view this result as entirely inconsistent with the aims of a free and open society.

I would reverse the judgment and direct that any evidence obtained as a result of the officer's observations of defendant's backyard from a non-public location must be suppressed.